UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SHAUL LEVY,

                  Plaintiff                                    17-cv-4022 (NSR)

LAW OFFICES OF J. HENRY NIERMAN

J. HENRY NIERMAN

RECOVERY OF JUDGMENT, LLC

------------------------------------------------------------X

## DECLARATION OF JOSEPH NIERMAN

## IN OPPOSITION TO PLAINTIFF'S MOTION AND

## IN SUPPORT OF DEFENDANTS' CROSS MOTION TO MOVE TO DISMISS AND/OR TO EXTEND DEFENDANTS' TIME TO ANSWER

JOSEPH HENRY NIERMAN, an attorney licensed to practice law in the State of New York, does hereby affirm under penalties of perjury as follows:

    1.    I am the individually, named Defendant herein the individual who operates under the name "Law Offices Of J. Henry Nierman" and the owner of Recovery Of Judgment, LLC. As such, I am familiar with the facts relevant to this dispute.

    2.    I make this Declaration in Opposition to the Plaintiff's motion for a default judgment and in support of the Defendants' motion to extend the Defendants' time to move to dismiss and/or to Answer the Complaint.

3. In or around February, 2010 I opened Recovery Of Judgment, LLC ("ROJ") with my partner Shawn Porat ("Porat") for the purpose of establishing a service that would assist third parties in executing judgments entered in the State of New York. At that time, Porat and I were equal 50% partners. In or around 2015 I acquired 100% percent ownership of ROJ.

4. In addition, I am an attorney who is a solo practitioner. For business purposes I operate as "Law Offices Of J. Henry Nierman" however there is no distinct entity bearing that name.

5. At all times that I engaged in the practice of judgment execution, I did so on behalf of my company ROJ. I have never practiced judgment execution for any other third parties.

6. Many of the judgments that were brought to ROJ for execution were ultimately assigned to ROJ. Some of the judgments were assigned pursuant to ROJ's purchase of the subject judgment. Other judgments were assigned pursuant to a contingency agreement between ROJ and its client. Those assignments were designed to facilitate execution in an efficient manner wherein I could serve as the judgment creditor's counsel without creating an attorney-client relationship between myself and every third-party utilizing ROJ's services.

7. From its inception and throughout its period of operation, ROJ instituted policies that were designed to maintain strict adherence to both New York law and the Fair Debt Collection Practices Act ("FDCPA"). Every employee of ROJ was given extensive training as to both steps that they must always take and other steps they must never take to ensure that debtor rights were properly protected as governed by local and Federal law.

8. For approximately seven years, ROJ succeeded in efficiently executing judgments while consistently operating within the metes and bounds of the law. During its term of

operation, ROJ pursued judgments against many thousands of debtors. Yet, in its history, prior to this action, only one debtor ever claimed that ROJ violated the law and brought suit alleging FDCPA violations. The Plaintiff in that action withdrew his suit with prejudice within weeks of being filed.

9. In or around 2010, Morrison approached ROJ regarding a judgment that he obtained against Shaul Levy (the "Judgment"). A copy of the Levy Judgment is annexed hereto and made a part hereof as Exhibit A. Shortly thereafter, the Judgment was assigned to ROJ.

10. The origin of the Judgment is highly significant to the underlying matter. The Judgment was entered in the City of New York County of New York, Part C. The subject Part of the Civil Court referenced is the Housing Part of the Civil Court.

11. Additionally, the Judgment was entered "Pursuant To Stipulation". Accordingly, the Plaintiff herein appeared either personally or via counsel to defend Morrison's claims and acquiesced to the entry of the Judgment against him.

12. Based on the foregoing, it is evident that all of the claims that the Judgment was "nonexistent" are completely false.

13. What is even more disturbing is the fact that the Plaintiff's made multiple misleading allegations in his Complaint that were repeated yet again in the underlying motion. These deceptive statements were not made based on a lack of knowledge about the Judgment. This was not a default judgment which could feasibly have been entered without the Plaintiff being aware about its existence. The only way this Judgment could have been entered by stipulation would be if the Plaintiff had appeared in Court (in person and/or through counsel) to try defending Morrison's claims and conceded that the Court should enter Judgment against him.

3

Yet, Levy has unabashedly repeated to this Court his claim that he believes the Judgment to be nonexistent.

14. In or around October 2016, Recovery Of Judgment agreed to sell all of its assets to a third party company (the "Sale Agreement" and the "Purchaser" respectively), including the judgments that had been assigned to ROJ.

15. Pursuant to the terms of the Sale Agreement, the benefits of the Levy Judgment were incorporated to the sale. Today, the Judgment is owned by ROJ, however, by contract, the benefits from the Levy Judgment belong to the Purchaser.

16. After executing the Sale Agreement, and prior to closing the sale, ROJ spent several months engaging in a transition process. During that period (the "Transition Period"), ROJ trained the Purchaser's staff in the art of undertaking efficient aggressive judgment execution while maintaining strict compliance with all applicable laws. That involved technical training which included having them "work" ROJ's judgments under the supervision of ROJ's staff.

17. During the Transition Period, on or about December 10, 2016 ROJ mailed a subpoena to Levy that included a cover letter (the "Letter"). The Letter was dated December 10, 2016 and postmarked December 13, 2016. The Letter, *inter alia*, directed Levy to appear for a post-judgment deposition on December 26, 2016 (the "Subpoena Date").

18. By statute, the Letter was required to contain language in bold letters warning the recipient that failure to respond to a subpoena could result in the imposition of fines or imprisonment. The Letter included the following language "**Please take notice that failure to comply with a properly issued subpoena entitles the Creditor to move the Court to impose**

4

**sanctions on the debtor and request <u>additional fines and/or imprisonment</u>**." (Emphasis as stated in Letter.)

19.     There is almost no meaningful distinction between the bold words employed on the Letter and the warning requirements set forth in NYCRR 208.39. That statute requires the letter to state in bold lettering "**This subpoena requires your personal appearance at the time and place specified. Failure to appear may subject you to fine and imprisonment for contempt of Court.**" The language used in the Letter was, if anything less threatening than the language required by statute. It is mysterious that the Plaintiff attempts to hold the Defendants liable both for issuing the warning that was presented in the Letter because it was purportedly too threatening, yet cites a purported second deficiency in the Letter that it did not contain the slightly more threatening wording presented by statute.

20.     The Defendants did not realize that the Subpoena Date selected was deficient in that it did not provide sufficient time between mailing and Subpoena Date and that the December 26 was a federal holiday.

21.     No follow-up was ever made by the Defendants to compel the Plaintiff's compliance with the mailed subpoena. To the Defendants' knowledge, no steps were ever taken by the Plaintiff to attempt to comply with the subpoena.

22.     ROJ was never regularly in the business of serving subpoenas upon judgment debtors. Virtually all of ROJ's investigative efforts consisted of doing research upon judgment debtors through service of information subpoenas issued to third-parties and online tools that are commonly used in the industry.

23.     Allegations that ROJ regularly served judgment creditors with subpoenas are not merely speculative and without basis, but completely contrary to fact.

24. The sale of ROJ's assets closed in or around January, 2017. Because it was an asset sale and not a sale of the company, upon closing, title to ROJ remained in my name.

25. The Plaintiff had no reason to try contacting me or my office to verify the validity of the Judgment. The underlying Judgment was entered pursuant to stipulation. Levy (or his counsel) appeared in Court and consented to the entry of Judgment. If Plaintiff's counsel had genuine questions as to the validity of the Judgment, they did not need to question me, they simply needed to question their client.

26. Upon receiving the Summons and Complaint, I contacted the Purchaser of ROJ's assets. I advised the Purchaser that despite the emptiness of the Plaintiff's claims, litigation is a waste of resources. Accordingly, I advised the Purchasers that the matter would best be settled if they agreed to waive the $3,000.00 statutory fees from the monies under the Judgment. They agreed and informed me that they would resolve this matter. Accordingly, I believed this matter to be concluded and no longer my concern.

27. I had no idea that this action was still pending until the Plaintiff filed the underlying motion. Had I had any knowledge that the action was not settled, the Defendants would have timely appeared via motion to strike or submission of an answer.

28. The Defendants have viable defenses that, if they are given an opportunity to be heard shall prove successful. These defenses include, but are not limited to: i) the Plaintiff failed to timely serve the Complaint; ii) the Judgment is a valid judgment and the Plaintiff knew it was a valid judgment at the time he filed the complaint; iii) the Letter at its worst, put an inappropriate date, however, it was in no way deceptive and not a violation of the FDCPA or any New York Statute; iii) the only remedy available to the Plaintiff is to quash the subpoena and no Court has ever found an attorney or judgment creditor liable of FDCPA violations for errors in a

6

cover letter to a subpoena; iv) there is no distinct entity "The Law Offices Of J. Henry Nierman"; vi) the validity of the Judgment completely nullifies the Plaintiff's claims brought under New York Statute; and vii) the Plaintiff's demands for legal fees are grossly exorbitant.

29. On or about April 20, 2018 the parties appeared in Court. At that time the Court directed Defendants to file the instant motion on or before May 4 and urged the parties to try reaching settlement. On or about May 2 I forwarded a copy of the Judgment to Plaintiff's counsel and presented a settlement offer. Plaintiff's counsel stated that they needed time to consider the Defendants' offer. In order to facilitate the possibility of settlement the Defendants asked the Plaintiffs to consent to an extension of time to file the instant motion. On or about May 3, Plaintiff's counsel consented to permitting the Defendants until May 11, 2018 to file the instant motion. On or about May 10 the Plaintiff finally responded to the Defendants' proposal. Unfortunately, no settlement has been reached.

## CONCLUSION

30. The Plaintiff's motion should be denied, and the Defendants should be granted an extension of time to move to dismiss and/or to answer the underlying Complaint.

Dated: New York, New York
May 10, 2018

/s/Joseph Nierman
Joseph Nierman

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SHAUL LEVY,

                Plaintiff                         17-cv-4022 (NSR)

      v.                                        AFFIDAVIT OF SERVICE

LAW OFFICES OF J. HENRY NIERMAN

J. HENRY NIERMAN

RECOVERY OF JUDGMENT, LLC

                Defendants.
--------------------------------------------------------X

State of: New Jersey

                SS:

County of: Passaic

I, JOSEPH NIERMAN, being duly sworn, depose and says: that I am the Defendant herein and served a copy of the following document(s): Notice of Motion to grant the Defendants an extension of time to move to dismiss and/or answer the Complaint on behalf of Recovery of Judgment, LLC and Law Offices Of J. Henry Nierman, Declaration of Joseph Nierman and Memorandum of Law on Daniel A. Schlanger, Esq. at Kakalec & Schlanger, LLP, 85 Broad Street, 18th Floor, New Yor, NY 10004 by mailing and depositing a true and correct copy of said document(s) in a mailbox located at: 158 main Street, Passaic, NJ on the following date: May 16, 2018 .

I declare under penalty of perjury that the foregoing is true and correct.

DATED: May 16, 2018

                                                               Joseph Nierman

Sworn to before me this 16th day of May, 2018

_Pat Schwabe - Notary_
Notary Public