```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ----------------------------------x
     SHAUL LEVY,
 3
                      Plaintiff,
 4
                -against-            17 Civ. 4022(NSR)(JCM)
 5
     LAW OFFICES of J. HENRY NIERMAN
 6   and RECOVERY of JUDGMENT LLC,
 7                 Defendants.
     ----------------------------------x
 8
                                    United States Courthouse
 9                                  White Plains, New York
10                                  February 28, 2020
11
12                      HONORABLE JUDITH C. MCCARTHY,
                                    United States Magistrate Judge
13
14
15   SCHLANGER LAW GROUP LLC
              Attorneys for Shaul Levy
16            9 East 40th Street, Suite 1300
              New York, New York 10016
17   BY:  EVAN S. ROTHFARB
18
19   J. HENRY NIERMAN
              Pro Se
              157 Mineral Spring Avenue
20            Passaic, New Jersey 07055
21
22   LAW OFFICE of BARRY C. SCHNEPS
              Attorneys for Law Offices of J. Henry Nierman
              1220 Broadway
23            New York, New York 10001
     BY:  BARRY C. SCHNEPS
24
25
```

Angela O'Donnell, RPR, 914-390-4025

```
 1              THE CLERK:  In the matter of Shaul Levy versus the
 2    Law Offices J. Henry Nierman.
 3              Counsel, please state your appearances, beginning
 4    with the plaintiff.
 5              MR. ROTHFARB:  Evan Rothfarb, Schlanger Law Group for
 6    plaintiff.  Good to see you, your Honor.
 7              THE COURT:  Good to see you, Mr. Rothfarb.
 8              MR. NIERMAN:  J. Henry Nierman, appearing pro se.
 9              THE COURT:  Good morning, Mr. -- Nierman, right?  Is
10    that how you pronounce it?
11              MR. NIERMAN:  Nierman.
12              THE COURT:  Nierman?
13              MR. NIERMAN:  Yes.
14              THE COURT:  Okay.
15              MR. SCHNEPS:  Barry C. Schneps, your Honor, for
16    Recovery of Judgment.
17              THE COURT:  Good morning, Mr. Schneps.
18              MR. SCHNEPS:  Good morning, your Honor.
19              THE COURT:  So how come you're not here in person,
20    Mr. Schneps?
21              MR. SCHNEPS:  Your Honor, my car could not start.
22    AAA came, they started it, they were going to tow it because
23    they said it could conk out, or they said I should go
24    immediately to a service repair station, which I did.
25              THE COURT:  Where are you located right now?
```

1              MR. SCHNEPS:  I'm in Queens, your Honor.

2              THE COURT:  In the future, I expect you to find a way

3      to take public transportation here --

4              MR. SCHNEPS:  Yes, your Honor.

5              THE COURT:  -- if your car does not work.

6              MR. SCHNEPS:  Yes, your Honor.

7              THE COURT:  Counsel, you can be seated.  Just stand

8      when addressing the Court.

9              So this case has been referred to me by Judge Romàn

10     to oversee general pretrial.  I want to hear a little bit about

11     what this case is about.  I know that there is a discovery

12     dispute outstanding and specifically addressing issues relating

13     to the defendants.

14             So I'm sorry, Mr. Schneps, that you're not here, but

15     you'll have to address it over the phone.

16             But Mr. Rothfarb, I've looked at the case, I

17     understand that this is a debt-collecting case, but if you

18     could tell me a little bit about it and what's going on with

19     discovery.  And then Mr. Nierman and Mr. Schneps, I'll give you

20     an opportunity to respond, okay?

21             MR. SCHNEPS:  Thank you, your Honor.

22             THE COURT:  So, Mr. Rothfarb.

23             MR. ROTHFARB:  Thank you, your Honor.  As you said,

24     this is a FDCPA and GBL 349 case related to the collection on a

25     purported judgment.  Mr. Nierman through his law office,

```
 1   defendant Law Offices of Henry Nierman, as well as Recovery of
 2   Judgment, of purported assignee of a civil court judgment from
 3   the City of New York attempted to serve an invalid subpoena on
 4   the plaintiff in Florida with a ten-day return date in New York
 5   on a federal and state holiday.  The subpoena was invalid as
 6   issuance.  So far we've been presented with no valid defense,
 7   and we believe the matter is a clear-cut violation of the
 8   FDCPA.
 9              THE COURT:  So what was the date of the subpoena and
10   what was the return date?
11              MR. ROTHFARB:  Just have to check the complaint
12   briefly, your Honor.  The letter was sent out enclosing the
13   subpoena dated December 10th with a postmark date of
14   December 13th and this is the year 2016.
15              THE COURT:  And the return date on the subpoena?
16              MR. ROTHFARB:  December 26th of that same year.
17              THE COURT:  Okay, thank you.
18              Okay, relating to discovery, have you gotten
19   anything?
20              MR. ROTHFARB:  We have received nothing, your Honor,
21   nor have any of the defendants responded to our multiple
22   requests to meet and confer and this is why we brought it to
23   your attention as soon as we could.
24              THE COURT:  So when did you serve -- you served
25   interrogatories and document requests?
```

1          MR. ROTHFARB:  And requests for admission that were

2     served last summer, I believe July 1st of 2019.

3          THE COURT:  And there's been no response.

4          MR. ROTHFARB:  There has been no response.  I will

5     say roughly a month later, I don't remember the exact timing, I

6     spoke to the defendants with regard to we had a 26(f) meeting

7     to put together discovery and case management schedule.  They

8     acknowledged receipt and asked for a few weeks.  We said we

9     would agree to that, but we have heard nothing ever since.

10          THE COURT:  And you had moved previously for default,

11     which was opposed and then denied by Judge Romàn; right?

12          MR. ROTHFARB:  We had.

13          THE COURT:  Okay.

14          Okay, Mr. Nierman and Mr. Schneps, who would like to

15     speak first?

16          MR. NIERMAN:  I would like to speak first, your

17     Honor.

18          THE COURT:  Thank you.

19          MR. NIERMAN:  My name is Joseph Nierman.  I am an

20     attorney, I'm admitted to practice in the state of New York.

21     Before I proceed, I last --

22          THE COURT:  Are you admitted to practice in federal

23     court?  Just out of curiosity.  You don't have to be to appear

24     *pro se*.

25          MR. NIERMAN:  Right.  I am not admitted.

Angela O'Donnell, RPR, 914-390-4025

```
 1              THE COURT:  Okay.

 2              MR. NIERMAN:  I'm actually -- that brings me to my

 3    next point is I'd like to move the Court sua sponte to be

 4    admitted pro hac vice and to substitute Mr. Schneps as counsel

 5    on this matter.

 6              THE COURT:  You can -- I don't believe you can

 7    represent the corporation.  If you -- I actually don't know the

 8    answer.  The application is going to be denied.  I cannot admit

 9    anybody pro hac vice, it's got to go through the clerk's

10    office.  You have to file all the appropriate motions all the

11    appropriate stuff.  They have to take a look through it and

12    make sure you have a certificate of good standing from where

13    you're at.  You have to be admitted in good standing in that

14    court and in any other court.  So I would not do it without a

15    formal application being made.

16              On the issue of being substituted as counsel as

17    Mr. Schneps on behalf of the corporate defendant, I don't

18    know -- Mr. Rothfarb, have you seen -- is there any prohibition

19    to essentially one defendant representing not only himself but

20    the corporate defendant?  There may be conflicts.  I don't

21    know.

22              MR. NIERMAN:  I'm the owner of the company, the sole

23    owner of the company, your Honor.

24              THE COURT:  Okay.

25              MR. ROTHFARB:  I don't know of any prohibition, but
```

Angela O'Donnell, RPR, 914-390-4025

1    as your Honor stated, there are, of course, potential

2    conflicts.  Particularly I'm concerned in that there's been a

3    representation in past proceedings that the company had been

4    sold to third parties, so I'm just not --

5              MR. NIERMAN:  Respectfully, I understand that you're

6    trying -- I understand that that might be a recollection.

7    There was never a representation to that effect made to Judge

8    Romàn.  The representation that was made is that all the assets

9    of the company were sold, but the actual ownership interest of

10   the company itself still remains with me alone.

11             THE COURT:  Okay.  So you have to make a formal

12   application for that.  I would also caution you, Mr. Nierman,

13   that it's not always good to represent one's self or have the

14   corporation represent one's self.  And when I'm going to look

15   and evaluate the corporation's representation, one of the

16   things that concerns me with allowing you to do that is you've

17   been representing yourself the entire time, Mr. Schneps has

18   been representing the corporation and you've had outstanding

19   discovery responses due since over six months ago.  I ordered

20   defendants to respond to docket number 53.  On February 7th I

21   ordered them -- you, defendants, to respond to that letter by

22   February 12th.  I received no response.  So when I look at

23   whether you're the appropriate person to be representing

24   *pro hac vice*, I'm taking that all into consideration because

25   you are on the docket and were responsible to respond to the

1    Court's direction on February 7th, and I've gotten no response.

2    So can you explain to me why you haven't responded?

3            MR. NIERMAN:  I apologize to the Court for my failure

4    to respond. I missed the notification requirement to respond by

5    February 12th.  With respect to the claim that there's been no

6    discovery provided, that's (indiscernible) untrue.  Back in

7    August, shortly after we held that 26(f) conference both the --

8    both myself and the corporate defendants provided initial

9    disclosures and made discovery demands of the plaintiff that we

10   have as of yet not received any response to whatsoever.

11           THE COURT:  When were those served?

12           MR. NIERMAN:  August 20, 2019.

13           THE COURT:  Mr. Rothfarb, did you get those discovery

14   demands?

15           MR. ROTHFARB:  I received nothing, your Honor.

16           THE COURT:  Did you receive discovery demands?

17           MR. ROTHFARB:  I received nothing, your Honor.

18           MR. NIERMAN:  I have them here with me.  I can

19   provide them.

20           THE COURT:  Where did you serve them?

21           MR. NIERMAN:  9 East 40th Street, Suite 1300, New

22   York, New York, 10016.

23           THE COURT:  And you, Mr. Rothfarb, have not gotten

24   them?

25           MR. ROTHFARB:  I have not gotten them.  We have never

1    had an issue with any party in any matter serving us documents

2    that we have either not received or failed to respond to, but

3    Mr. Nierman says he sent them, Mr. Nierman says he sent them.

4              THE COURT:  So have you sent formal responses to all

5    of the requests made by Mr. Rothfarb or have you just done

6    initial disclosures?

7              MR. NIERMAN:  We did initial disclosures and

8    discovery demands.

9              THE COURT:  No, did you respond to Mr. Rothfarb's

10   discovery demands?

11             MR. NIERMAN:  No we have not responded as of yet.

12             THE COURT:  Why?

13             MR. NIERMAN:  We have not provided responses yet,

14   your Honor.

15             THE COURT:  Why?

16             MR. NIERMAN:  Frankly, a lot of the records -- as I

17   mentioned, the assets were sold to a third party.  A lot of the

18   records are held by two different third parties who I have

19   nothing to do with and haven't had anything to do with them in

20   several years.  I've been trying to contact them, one's Mr.

21   (indiscernible) who specifically is the one who was the head

22   manager who I had purchased the company from who sold it to a

23   third party and would work with me in operations all the way

24   through the dates of the subject period.  Together we

25   implemented policy procedures and oversaw the management and

1    operation which lie at the heart of the defense, heart of

2    the -- part of the responsibility of the defendants is to

3    establish that they had proper procedures in place in order to

4    safeguard against any erroneous letters or communications being

5    sent to third parties.  We had those practices in place.  We

6    had, in the five years that we were operating Recovery of

7    Judgment, this is the only case that has ever been brought

8    against us for a FDCPA violation because we were meticulously

9    scrupulous in the way we were operated.  And we had those

10   procedures in effect, and we had a handbook that we prepared

11   which all these documents are in his possession.  He and I are

12   not really on the best -- objectively, we're not on the best of

13   terms right now, and I'm trying to obtain those documents

14   because they lie at the heart of the defense of this matter.

15             THE COURT:  Mr. Rothfarb can subpoena them if you

16   give him the information of who this person is.

17             MR. NIERMAN:  And I provided that in my initial

18   disclosures back in August so --

19             THE COURT:  Which he did not get.

20             MR. NIERMAN:  And that's where we are now.

21             THE COURT:  But you've ignored the Court, you've

22   ignored his request, you've been essentially completely and

23   totally delinquent on this case for months.

24             MR. NIERMAN:  I haven't been looking to be

25   delinquent, your Honor.  Like I said, I have been trying to

```
 1   obtain those file information.  Those files that he's asking

 2   for, everything that he's asking for is not in my possession.

 3   None of it.  So all I can do is basically try and --

 4            THE COURT:  You can simply tell him whose possession

 5   it's in and he can try and obtain it himself.

 6            MR. NIERMAN:  And that was -- like I said, that was,

 7   that was part of my initial disclosures.

 8            THE COURT:  You didn't return his calls just to tell

 9   him like the problem --

10            MR. NIERMAN:  I never got phone calls from

11   Mr. Rothfarb.  I had to actually look up his number in order to

12   contact him now because I never heard from him in --

13            THE COURT:  Mr. Rothfarb, have you sent him

14   correspondence?

15            MR. ROTHFARB:  I have.  I've attached some of the

16   email correspondence.

17            THE COURT:  Have you used the Schlanger Law Group

18   letterhead when doing so?

19            MR. ROTHFARB:  Always, your Honor.

20            THE COURT:  And the letter that was docket number 53,

21   was that copied to Mr. Nierman and Mr. Schneps?

22            MR. ROTHFARB:  By ECF, your Honor.

23            THE COURT:  And on the first page of that letter, the

24   address that's on here, 9 East 40th Street, Suite 1300, New

25   York, New York, 10016; is that correct?
```

1          MR. ROTHFARB:  That is our address, your Honor.

2          THE COURT:  Is the telephone number on here

3    (212)500-6114 correct?

4          MR. ROTHFARB:  It is, your Honor.

5          THE COURT:  Is the fax number (646)612-7996 correct?

6          MR. ROTHFARB:  It is, your Honor.

7          THE COURT:  Is the email,

8    ERothfarb@Consumerprotection.net correct?

9          MR. ROTHFARB:  It is, your Honor.

10         THE COURT:  You've had this information.  So I don't

11    know how you would have had to, quote, look it up and to get

12    it.  You've been on ECF, you've had all this information,

13    Mr. Nierman.

14         MR. NIERMAN:  Okay.

15         THE COURT:  So why haven't you been doing anything on

16    this case?

17         MR. NIERMAN:  Your Honor, as I said, the documents

18    and information that they're looking for is not in my

19    possession or custody.

20         THE COURT:  You can repeat that 100 times, but that

21    doesn't answer the question.  Why did you ignore the Court's

22    order and why have you not reached out to Mr. Rothfarb to have

23    a discussion about this?  Under the Federal Rules of Civil

24    Procedure --

25         And Mr. Schneps, the same conversation goes to you.

1   How come you haven't reached out to Mr. Rothfarb as counsel for

2   the corporate defendant in this case in order to discuss the

3   discovery in this matter?

4   　　　　　MR. SCHNEPS:  Your Honor, I should have.  I was

5   taking the same position as the *pro se* and that we have nothing

6   in our possession that he had requested.

7   　　　　　THE COURT:  Don't you think it would have been

8   helpful, Mr. Schneps, to reach out to Mr. Rothfarb and tell him

9   that not only the documents that they want isn't in your

10  possession and that they are in the possession of a third party

11  and here's the information so Mr. Rothfarb could have gone

12  forward and tried to start subpoenaing the documents and

13  gathering them, the ones that he needs?

14  　　　　　MR. SCHNEPS:  Yes, your Honor.

15  　　　　　THE COURT:  So why have you done nothing in this case

16  and put the Court in a position where I've had to get letters

17  from Mr. Rothfarb and motions to compel?  And even though

18  there's motions to compel, there was no response from you.

19  　　　　　MR. SCHNEPS:  Your Honor, I have to beg the

20  forgiveness of the Court.  I've been frankly dealing with many,

21  many medical issues with my son and wife, and I should have got

22  back to him to inform him of the situation.  It certainly will

23  not happen again.

24  　　　　　THE COURT:  And how come you didn't respond to the

25  Court's order dated February 7th, docket number 54, that

Angela O'Donnell, RPR, 914-390-4025

1    directed you to respond to Mr. Rothfarb's letter and the Court

2    by February 12th?

3            MR. SCHNEPS:  Your Honor, I could truthfully say I

4    didn't receive it.

5            THE COURT:  That was issued on ECF.  You're on ECF,

6    Mr. Schneps; right?

7            MR. SCHNEPS:  Yes, your Honor.

8            THE COURT:  Yes.

9            MR. SCHNEPS:  I did not receive it, your Honor.

10           THE COURT:  And Ms. Hummel, is this document docketed

11   on ECF?

12           THE CLERK:  Yes.

13           THE COURT:  It's docket number 54.

14           So Mr. Schneps, you can't say you did not receive it,

15   you received it.  You may not have looked at it.  You may not

16   have read it, and you clearly did not respond to it.  But it's

17   incumbent upon all counsel admitted in the Southern District of

18   New York to participate in electronic case filing documents.

19   You are part of this case, you are required under the rules to

20   know what's going on in ECF, you are required under your

21   obligations as an attorney admitted in the Southern District of

22   New York to not ignore court orders and court directions and

23   this was a court order and you did not respond to it, and you

24   cannot simply say you didn't receive it because your failure to

25   receive it is all upon your failure to look at it, not the fact

1    that it wasn't received.  It was received.  You just didn't

2    look at it.

3              MR. SCHNEPS:  Your Honor, I greatly apologize.  I

4    don't know how I missed it, I don't know, but I'm very sorry.

5              THE COURT:  Here's what we're going to do.  The

6    parties are directed, today's February 28, they are directed by

7    March 6th to meet and confer and to give Mr. Rothfarb all the

8    information about who has the documents, et cetera.  That meet

9    and confer doesn't have to be in person, it could be by phone,

10   but it has to be meaningful, and you have to talk to each

11   other, and you have to try to resolve the outstanding issues.

12             Mr. Nierman, do you have duplicate copies of the

13   documents that you said that you have previously served on

14   Mr. Rothfarb?

15             MR. NIERMAN:  I do, your Honor.

16             THE COURT:  Can you hand them to Mr. Rothfarb now.

17             Mr. Rothfarb, what have you been handed?  Just for

18   the Court's reference.

19             MR. ROTHFARB:  I've been handed a document labeled

20   "Initial Disclosures," approximately two pages long.  Another

21   "Initial Disclosures."  The initial set is from Mr. Nierman.

22   The second set is from Offices of J. Henry Nierman.

23             THE COURT:  What are the dates on them?

24             MR. ROTHFARB:  The documents are dated August 20th,

25   2019, both of them.  And then there's a demand for discovery

1    and inspection from, appears from Mr. Schneps directed to

2    Schlanger Law Group.  Also dated August 20th, 2019.

3              I will note there's no certificate of service

4    attached to any of the documents.

5              THE COURT:  Mr. Nierman, where's the certificate of

6    service?

7              MR. NIERMAN:  I don't have a copy of the certificate

8    of service on me, your Honor, I apologize.

9              THE COURT:  Provide it by March 6th the certificates

10   of service to Mr. Rothfarb.

11             MR. NIERMAN:  Very well, your Honor.

12             MR. ROTHFARB:  Your Honor, given the unusual

13   circumstances here, we'd also like to see the original files to

14   see what metadata, to show when these documents were composed,

15   these specific documents, which is as provided in the Court's

16   order where follow-up, where specific ESI can be requested for

17   any paper discovery.

18             MR. NIERMAN:  I don't -- your Honor, at this point

19   we're looking to move forward and have this thing resolved.  I

20   do not believe that discovery should be a lengthy process.

21   This is a relatively simple matter once we get our hands on the

22   proper documents.

23             What we're dealing with essentially is one letter

24   that was erroneously sent to Mr. Levy and a question which is

25   basically called under the law for review of policies that we

1   implemented and procedures we ran for operating Recovery of

2   Judgment.  That's essentially what this boils down to.

3            With respect to the discovery, and I will tell the

4   Court that in those discovery demands, based on the fact that

5   there is a judgment that Recovery of Judgment is presently

6   holding against Mr. Levy, there are demands for documents which

7   would only be provided post-judgment.  They relate to the fact

8   that there is a judgment and they accordingly are entitled

9   to -- they're entitled to those particular documents.  But with

10  respect to the actual --

11           THE COURT:  Mr. Nierman, would you say that the

12  subpoena was properly served and this letter was proper?

13           MR. NIERMAN:  No, your Honor, I would not say it is.

14           THE COURT:  So this case should be settled.

15           MR. NIERMAN:  Your Honor, it was one letter.

16           THE COURT:  Doesn't matter, if it's improper, then

17  you violated the Fair Debt Collection Practices Act and

18  therefore you should settle this case.

19           MR. NIERMAN:  When we discussed this -- I mean, with

20  respect to settlement discussions, your Honor, like I said, it

21  was one letter which was never followed up on.  It was never --

22           THE COURT:  So the damages are limited.

23           MR. NIERMAN:  Right.  And essentially the damage bill

24  which was presented for that one letter was $14,000 legal fees,

25  which was astonishing.

1          MR. ROTHFARB:  Your Honor, he has prolonged this

2    case.

3          THE COURT:  Yes.

4          MR. ROTHFARB:  There is emotional distress available.

5    The exact indenture, this is an individual FDCPA case, has a

6    different character than a class case, including emotional

7    distress damages.  What he attempted to do was scare the

8    bejesus out of an out-of-state client to come the day after

9    Christmas --

10          THE COURT:  Christmastime.

11          MR. ROTHFARB:  -- into (indiscernible).

12          THE COURT:  I agree with you, Mr. Rothfarb, this is

13    not your typical give me $500 and they walk away.  You served a

14    subpoena on December 10th saying they had to appear on

15    December 26th.  Plus you have completely ignored any responses

16    to anything between having a motion to default, a motion to

17    compel.  It's not because Mr. Rothfarb is jumping the gun.  He

18    moved, he's waited until now even though he's been trying to

19    get you for months to deal with it.

20          Mr. Nierman, you're making it worse.  This can get

21    rid of probably rather fast if you'd just sit down and talk and

22    dealt with the issue rather than dragging this out.  You've not

23    responded to the Court.  You've wasted the Court's time.  I'm

24    sure Judge Román would have preferred not doing a motion for

25    default and having decide it in this case.  That's a tremendous

Angela O'Donnell, RPR, 914-390-4025

1     amount of drain on the court's resources.  I certainly didn't

2     expect to be having to spend close to a half hour with you

3     talking about a motion to compel.

4            Mr. Nierman, the situation you're in right now, you

5     can get frustrated that he is -- it's a small, single, one

6     case.  Yeah, I agree.  But you've made Mr. Rothfarb's job

7     harder by not responding.  You've made my job harder by

8     ignoring my orders.

9            MR. NIERMAN:  I apologize to the Court for -- I

10    apologize to the Court for any delays that have been caused or

11    failure to abide by the court order, which I failed, and I

12    apologize for it, and I can assure the Court that will not

13    happen again.

14           THE COURT:  Thank you.

15           I'd like you to talk about settlement.

16           And Mr. Rothfarb, be reasonable, it's a one-shot

17    deal.  This isn't -- he's not -- you know, he's not winning the

18    lottery in this case.  You're not winning the lottery in this

19    case.  This is --

20           MR. ROTHFARB:  Your Honor, we are reasonable, but as

21    you noted, the proceedings have been prolonged and we have also

22    had years of conversations with Mr. Nierman that if this did

23    not resolve early it becomes a bigger problem and more

24    difficult to settle.

25           THE COURT:  That's why we're going to settle it

                    Angela O'Donnell, RPR, 914-390-4025

1    early.

2              MR. ROTHFARB:  It's relatively early in the discovery

3    process, your Honor, I agree with you, but as you've seen,

4    there's been extensive motion practice already.

5              THE COURT:  Yes, I understand, but you're going to be

6    reasonable.

7              MR. ROTHFARB:  We will, your Honor.

8              THE COURT:  And Mr. Nierman, you're going to talk to

9    him, and I want you to meet and confer on the discovery just

10   because I'd like to you get -- I'm not extending any deadlines

11   in this discovery plan.  I'd like you to get it.  But I'd also

12   like you to meet and confer on settlement and try to see if we

13   can resolve this case before I have to deal with motions *pro*

14   *hac vice* before I have to deal with researching whether you can

15   represent the corporate defendant.  I really want you guys to

16   try and talk about this and try and resolve this.

17             Understand, Mr. Nierman, this is going to cost a

18   little bit more than you want it to because of the prolonged

19   time that -- having to make a motion for default and then also

20   motion to compel and also the fact that this was -- the timing

21   of the subpoena was particularly bad.

22             So understand, Mr. Rothfarb, that if there is a

23   judgment against your client, your client does not have also

24   perfectly clean hands, and so -- the FDCPA sets forth specific

25   things but it is really to -- it's really to affect behavior

1   and not to be windfalls on either attorneys or clients.  It's

2   really -- the whole purpose of the Fair Debt Collection

3   Practices Act is to make sure that debts are collected in a

4   fair and non-threatening manner.

5            MR. NIERMAN:  Your Honor, can I make a point here?

6            THE COURT:  Yes.  You might not want to, but go right

7   ahead.

8            MR. NIERMAN:  With respect to this entire matter, the

9   genesis of this was a letter which I cannot deny was invalid

10  with respect to the demand it was making.  It referenced a

11  judgment that Mr. Levy claimed did not exist.  He must have

12  gone to his attorneys and said there is no such judgment and

13  there was never any such judgment and they're just coming after

14  me and harassing me for absolutely no reason.  Which I can

15  understand why that would stoke the flames of his counsel to

16  say -- to think, to assume that like, unfortunately, many

17  judgment collection agencies, that we are a nefarious agency

18  who is looking to literally rip consumers off, send them

19  letters of harassment and shake them down for some money.

20           THE COURT:  Mr. Rothfarb, is Mr. Levy's position

21  there's no valid judgment -- not that it really matters but --

22           MR. NIERMAN:  The reason, what I'm getting at your

23  Honor, this is what I want to get at.  I am positive that the

24  Schlanger Law Group, if they would have seen this letter and

25  understood that it was not based on no judgment, when they

1    researched it, they didn't realize there was not just -- it was

2    housing court not civil court, which is why they didn't find

3    it, but not only was it in housing court, it was in housing

4    court that Mr. Levy had himself consented to the judgment.

5        So he wrote to his attorneys claiming there was no

6    such judgment, said that never happened, even though it wasn't

7    a default judgment that he didn't know about, it was a judgment

8    he had appeared for, consented to, in housing court and then he

9    went around and went to his attorneys and said, there's no such

10    judgment, I don't know why they're coming after me, when he

11    never paid a dime on a ten $10,000 judgment that he owed.  And

12    that's what we were trying to collect.  And pursuant to that,

13    we sent a subpoena, which was admittedly flawed and then being

14    used potentially as a sword to say, oh, okay, let's punish this

15    collection agency which had an error once in five years at the

16    same time to say that all of a sudden this should rack up

17    $15,000 in bills when this entire genesis would never happened

18    if Mr. Levy would have been honest and said this was -- okay,

19    you know what, this was a valid judgment, and the amount of

20    fear and concern that he had that he was so shaken from one

21    letter that he received which was never followed up on, no

22    communication saying, hey, you must come down, no phone call,

23    no other letters, nothing, and that to say that he was so

24    shaken by this that he had to go run to counsel and rack up

25    $20,000 legal fees seems absurd, and it was designed

1    specifically for the sole purpose of trying to shake me down.

2    Of trying to say, if you don't give us $10,000, which is what

3    our last settlement talks had, because your Honor's pressing us

4    to have settlement talks.  Our last settlement talk was

5    basically saying, give us $11,000 now, waive the entire

6    judgment, and then we'll go away, otherwise we're just going to

7    rack up more fees and more fees and more fees and more fees.

8              THE COURT:  Mr. Rothfarb.

9              MR. ROTHFARB:  Well, I'm a little confused at the

10   time period Mr. Nierman is referring to because there were, I

11   believe, precomplaint discussions between my partner Dan

12   Schlanger and Mr. Nierman where Mr. Schlanger asked for I think

13   several years to get a copy of the judgment.  My office could

14   not find a copy of the judgment.  Mr. Levy had no recollection

15   of participating in the judgment.  I still have not verified

16   whether the judgment does exist or doesn't exist.  I have a

17   copy from defendant that was provided in the context of the

18   default proceedings, but the issue of the validity of the

19   judgment is beside the point.

20             THE COURT:  Well, let's just say I'm going to direct

21   you guys to discuss settlement.  I'm also going to say that

22   whether a valid judgment exists or not, no aspect of this

23   settlement can be a request to waive that judgment.  Nothing.

24   If there is a valid judgment, he's responsible for it, and I'm

25   not saying if the debt collector did a bad subpoena.  That is

1   asking for a windfall that's not appropriate.

2          The Fair Debt Collection Practices Act is to protect

3   against aggressive and inappropriate collection of debt, not to

4   waive debts.  So that is not happening in this case.  And you

5   make sure, Mr. Rothfarb, that your client understands that.

6          And also at this point, yes, you've spent money, but

7   you're going to not get dollar-for-dollar on that, and nor is

8   your client going to get a windfall.  This is not a large-pay

9   case.  It may be a little bit more than a few hundred dollars,

10  but it is not -- we're not looking at high-level emotional

11  distress in these types of cases.  This case is a little bit

12  higher, but we're not looking at high dollars.

13         So I strongly recommend that you meet and confer.

14  I'm going to give you till March 13 to meet and confer on the

15  discovery issues and to meet and confer on the deposition.  Not

16  on deposition, on settlement.

17         I'm going to strongly, strongly advise everybody to

18  settle this case.  You're going to notify me on the 13th by

19  letter what the status of everything is.  And at that point I

20  will hopefully -- either I get rid of this case because the

21  case will have settled, or I will set another conference for us

22  to talk.

23         After that date of March 13th, if you need to move

24  *pro hac vice* to be admitted into this Court, Mr. Nierman you

25  can do that, you just also need to include law on whether you

1    can also represent the corporate defendant in that motion.  But

2    follow the federal rules when making that motion.

3            MR. NIERMAN:  Understood, your Honor.  Thank you very

4    much.

5            THE COURT:  Okay.

6            Mr. Schneps.

7            MR. SCHNEPS:  Your Honor.

8            THE COURT:  You're still in the case and you're still

9    responsible for the corporate defendant.

10            MR. SCHNEPS:  Yes, your Honor.

11            THE COURT:  Until -- if you are relieved.  I will not

12    be relieving you unless the corporate defendant has counsel.

13            MR. SCHNEPS:  Yes, your Honor.

14            THE COURT:  Appropriate counsel.  So you're to comply

15    with this Court order also that by March 13 you have to

16    participate in a settlement conference with each other and a

17    meet and confer on outstanding discovery.

18            I want everybody to approach this settlement

19    conference in a collegial and productive way.  I want all

20    people to be reasonable.  When I mean that, it means

21    Mr. Nierman, you're probably going to have to pay in this case

22    more than you want to pay.

23            And Mr. Rothfarb it means the Court will put pressure

24    on you to take a little bit less than you want.  Okay?

25            MR. SCHNEPS:  Yes, your Honor.

 1          MR. ROTHFARB:  Thank you, your Honor.

 2          THE COURT:  Mr. Rothfarb, I am going to close the

 3    gavel on your docket 53 and say that the ruling's based on

 4    that.  I am moving to compel in the sense that I want you guys

 5    to meet and confer and get the information.

 6          And then you do have to respond, Mr. Schneps, in

 7    writing if this case does not settle to Mr. Rothfarb's

 8    discovery responses.  If those responses are, we don't have the

 9    documents and they are in that possession, you have to do so.

10          So what I'm going to do is say by March -- I'm going

11    to put one other deadline on you -- by March 31st.

12          MR. SCHNEPS:  Yes, your Honor.

13          THE COURT:  Formal responses to all outstanding

14    discovery requests.  Both sides have to be responded to.

15          Mr. Rothfarb, your request for the metadata I

16    understand.  I'm going to direct counsel to give you the

17    affidavit of service.  At this point I'm not going to require

18    the metadata because I really don't want to get into a long

19    discovery on those issues.

20          All counsel are reminded that they must also present

21    truthful and accurate statements to the Court and at this point

22    I'm going to assume that the all counsel are stating truthful

23    and accurate statements to the Court.  So I'm going to deny the

24    request for the metadata, but I'm going to ask that you respond

25    to the discovery you have by March 31st.

```
 1                 And Mr. Schneps --

 2             MR. SCHNEPS:  Yes, your Honor.

 3             THE COURT:  -- Mr. Nierman, you're to respond to the

 4     discovery by March 31st.  Of course, if the case settles, you

 5     do not.

 6             Mr. Rothfarb, anything else?

 7             MR. ROTHFARB:  Yes, your Honor.  There's a status

 8     conference currently scheduled for March 12th.

 9             THE COURT:  Before me?

10             MR. ROTHFARB:  Before you.

11             THE COURT:  Thank you for reminding me of that.  We

12     are going to cancel that.  I'm going to wait until I get your

13     letter on the 13th, and probably at that point we'll reschedule

14     for something in April.

15             And because there's a *pro se* in this case, even

16     though you're an attorney, Mr. Nierman, my procedure is all

17     conferences and matters with *pro se* are in person.

18             MR. NIERMAN:  Understood, your Honor.

19             THE COURT:  Okay?

20             Is there anything else we need to deal with,

21     Mr. Schneps, Mr. Nierman or Mr. Rothfarb?

22             MR. SCHNEPS:  No, your Honor.

23             MR. ROTHFARB:  No, your Honor.

24             THE COURT:  Mr. Nierman.

25             MR. NIERMAN:  No, your Honor.
```

1            THE COURT:  Thank you counsel.  Have a good day.

2            MR. NIERMAN:  Thank you.

3            MR. ROTHFARB:  Thank you.

4            MR. SCHNEPS:  Thank you, your Honor.  Thank you.

5            (Proceedings concluded).

6   Certified to be a true and accurate

7   transcript of the digital electronic

8   recording to the best of my ability.

9   _____

10  U.S. District Court

11  Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25