UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X          17-CV-4022(NSR)
SHAUL LEVY,

                Plaintiff,

LAW OFFICES OF J. HENRY NIERMAN
J. HENRY NIERMAN
RECOVERY OF JUDGMENT, LLC,

                Defendants.
-------------------------------------------------X

# DECLARATION OF VERA PORAT

## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

VERA PORAT, an individual over eighteen years of age residing in the State of New York, hereby affirms under penalties of perjury as follows;

1. I was the sole office manager of corporate Defendant Recovery Of Judgment, LLC ("ROJ") at all relevant times herein.

2. I submit this affidavit in support of Defendants LAW OFFICES OF J. HENRY NIERMAN ("LOJHN") and J. HENRY NIERMAN ("JHN") and RECOVERY OF JUDGMENT, LLC ("ROJ") application pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the action as against said defendants.

3. ROJ was in the business of judgment execution on behalf of third parties. My responsibilities as office manager of ROJ included, *inter alia*, reviewing files, handling the incoming and outgoing mail, the processing of files, document production and service of those documents.

1

4. All of my relevant actions in this matter, were as an employee of ROJ. In that capacity, I helped ROJ pursue judgments against third-party judgment debtors. I never had any ownership interest in ROJ or any interest in the profits of the company. My compensation was in no way connected to ROJ's success or failure in executing judgments. I had no actual or potential personal benefit from ROJ's claim's/ execution efforts against Levy, or any other judgment debtors that ROJ pursued.

5. All of my duties were performed exclusively for the benefit of ROJ. I never worked for JHN or LOJHN, nor did I ever receive any salary or compensation from said defendants.

6. Prior to commencing my role as ROJ's office manager, I received extensive training in the proper processes for judgment execution. The objective was to become proficient in Judgment execution that was effective, efficient, legal and ethical. This training did not merely detail ROJ's method of operation, it further detailed the guidelines of the Fair Debt Collection Practices Act (the "FDCPA") as well as governing local statutes that pertain to proper and legal methods of judgment execution. I spent months learning the nuances of the FDCPA and its exacting standards/requirements for what steps and methods a judgment execution company: i) must take; as well as ii) boundaries that a judgment collector may never cross.

7. All of ROJ's cases involved judgments entered in New York with judgment debtors residing in New York. Any cases that did not fit these parameters, were either farmed out to third-parties in local jurisdictions, or the case was rejected altogether by ROJ.

8. ROJ was a busy office. We had hundreds of cases and generated several thousands of documents per month. This level of document production did not enable JHN to review every letter or document that went out of ROJ's office.

9. ROJ maintained a database of its judgments and forms that would be used repeatedly, as appropriate. The system ROJ designed, enabled its staff to merge the appropriate file (judgment) with the appropriate form and the system would automatically generate an appropriate final document. The overwhelming majority of ROJ's document production was generated by these forms and programs that ROJ had in place from before my employ. Rarely, if ever, did these forms require modification after they were generated. Aside from unusual circumstances where documents or letters needed unique attorney oversight and input, ROJ produced all of its documents using this method.

10. If I ever had a question about something that appeared to be an unusual circumstance, I asked JHN for direction and guidelines under both New York and Federal law. Additionally, JHN would frequently review and/or spot-check my work to ensure that document production and servicing of files was conducted appropriately.

11. My employ with ROJ was successful and my training served me well. During the roughly two years that I served as ROJ's office manager, while sending out those many thousands of documents, to my best recollection, no complaint of any kind was ever filed against the ROJ.

12. In or around November 2016, ROJ entered into an agreement to sell its assets to an unrelated third-party named WAK Enterprises, LLC ("WAK"). Closing of title was set for late January, 2017. I received no portion of the proceeds of the subject sale.

13. Pursuant to the subject agreement, prior to closing, ROJ was responsible to train several members of WAK in its method of executing judgments.

14. By this juncture, I had become sufficiently versed in proper, effective, legal and ethical judgment execution, that I was tasked with the primary responsibilities of training

WAK's staff to mirror ROJ's methodology (hereinafter, said period of time is referred to as the "Training Period"). Several times per week, for months, I spent the bulk of my day in WAK's offices, providing hands-on training to their staff to engage in proper methods of judgment execution.

15. During the Training Period, I did my best to oversee ROJ's operations as their business was winding down. That was far and away the most strenuous period of my employ at ROJ.

16. It was during the Training Period that the subject letter (the "Letter") was generated and mailed to Plaintiff, Shaul Levy ("Levy").

17. I never reviewed the Levy file with JHN or LOJHN, nor the Letter that was mailed.

18. I do not recall the specifics as to how the Letter was ever served by mail upon Levy.

19. Before I began working for ROJ, I was trained that while an information subpoena may be served by certified mail, a *subpoena duces tecum* demanding that a party appear for deposition and produce records requires personal service.

20. The Letter never should have been mailed, even if Levy resided in the State of New York. All the more so, the Letter should not have been mailed to an out of State debtor.

21. I regret that the Letter was mailed to Levy. Mailing a *subpoena duces tecum* was never part of ROJ's normal process. That is not how ROJ ever operated, nor is that how we trained WAK's staff to operate.

22. To be clear, I do not specifically recall mailing the Letter. There was nothing terribly memorable about the Levy file. My attestation to my role in mailing the Letter, results from the following factors: i) Levy alleges that received a letter via mail that looks similar to the type of form that I regularly produced; ii) any letter of that sort, produced

during the Training Period would have been a document that I would have produced; iii) the date on the Letter indicates that it was produced during the Training Period; iv) JHN never generated or produced those types of form letters; v) I alone oversaw and handled ROJ's outgoing mail during the Training Period.

23. I never mailed out *subpoena duces tecums* to ROJ's judgment debtors. I cannot understand how the Letter went out to Levy, other than to attribute it to clerical error.

24. There was a lot going on during this period. I was working as diligently as possible while undertaking the dual role of ROJ office manager and teaching WAK staff how to operate a judgment execution company.

25. I cannot imagine that this error would ever have happened if I had not been so heavily taxed during the Training Period. That type of error never happened during my years as office manager prior to the Training Period and, to my knowledge, no other errors happened with any other judgment debtors during the Training Period.

26. JHN had no involvement with the Letter's generation or delivery, nor was he likely even aware of that document being produced and mailed.

27. Mailing the Letter was inconsistent with the training that JHN provided me, inconsistent with ROJ's method of operation and inconsistent with the training I provided to WAK's staff.

28. If JHN or I had noticed the error, the Letter would never had been mailed.

29. I apologize for whatever harm came to Levy as a result of this one-time clerical error and respectfully urge the Court to deem it excusable neglect.

Based upon the foregoing, I respectfully urge the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure to grant summary judgment in favor of Defendants and dismiss the action in its entirety.

Sworn to before me this
14 day of January, 2021

_____
Vera Porat

On January 14, 2021 Vera Porat, known to me, or having provided sufficient identification to verify the veracity thereof, appeared before me and executed, signed the instant affidavit.

_____
Notary Public

**AJAY SAVAN**
Notary Public, State of New York
No. 01SA6218182
Qualified in Nassau County
My Commission Expires 03/01/2022