UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SHAUL LEVY,

        Plaintiff                                   17-cv-4022 (NSR)

LAW OFFICES OF J. HENRY NIERMAN

J. HENRY NIERMAN

RECOVERY OF JUDGMENT, LLC

------------------------------------------------------------X

## DECLARATION OF JOSEPH NIERMAN

## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

JOSEPH HENRY NIERMAN, an attorney licensed to practice law in the State of New York, does hereby affirm under penalties of perjury as follows:

    1.    I am the individually named Defendant herein, the individual who operates under the name "Law Offices Of J. Henry Nierman" and the owner of Recovery Of Judgment, LLC. As such, I am familiar with the facts relevant to this dispute.

    2.    I make this Declaration in Support of the instant motion to have summary judgment awarded in favor of J. Henry Nierman ("JHN") the Law Offices of J. Henry Nierman ("LOJHN") and Recovery of Judgment, LLC ("ROJ") pursuant to Rule 56 of the Federal Rules of Civil Procedure and to dismiss the complaint (the "Complaint"). (A copy of the Complaint is annexed hereto and made a part hereof as Exhibit "A".).

1

**PRELIMINARY STATEMENT**

3. The underlying claim is based upon a purported violation by the Defendants of 15 USC §1692 commonly referred to as the Fair Debt Collection Practices Act (the "FDCPA").

4. The FDCPA only applies to debt collectors and does not govern persons who fail to qualify as debt collectors under its terms.

5. In *Henson v. Santander*, 200 U.S. 321 (2017) the United States Supreme Court ruled that parties who are in the business of regularly acquiring debts that originated with third-party creditors do not qualify under the FDCPA as debt collectors and are not subject to the statute. ROJ's regular practice was to acquire judgments, have them assigned and thereafter executing them. The instant matter was part of our standard operating procedure. The underlying Judgment was not originally obtained by ROJ or any of the Defendants. Rather, the subject judgment, was acquired by ROJ after judgment had been rendered. Accordingly, JHN, LOJJHN and ROJ are not deemed "debt collectors" under the FDCPA. No claim based upon their purported violation of the FDCPA has legal standing.

6. Notwithstanding the *Henson* decision, justice warrants dismissal of the action. The underlying action was designed by the Plaintiff to capitalize on a clerical error made exclusively by Recovery Of Judgment, LLC ("ROJ") and to exact an onerous punishment upon all three co-defendants for ROJ's one-time mistake.

7. Premised on the bad faith and patently false claim by Plaintiff that the Defendants attempted to execute upon a fictitious judgment (hereinafter, said claim is referred to as the "Bad Faith Claim"), a claim that the Plaintiff knew, or should have known was completely false, the Plaintiff has harassed the Defendants for years and engaged in a considerable waste of the Court's time as well as the Defendants' time and money.

8. The subject letter that is at the underpinning of Plaintiff's claim (the "Letter") is a purported subpoena duces tecum that was mailed to the Plaintiff. The Letter was erroneous. It should never have been sent. It was prepared and mailed exclusively by ROJ and for the exclusive benefit of ROJ. The Letter was prepared and mailed without the knowledge or awareness of either JHN or LOJHN and despite the best efforts of JHN and/or LOJHN to ensure that no such error would ever occur.

9. This one-time clerical error is a black smudge on ROJ's pristine record of strict compliance with the Fair Debt Collection Practices Act. There was no follow-up effort to the Letter made by any of the Defendants, or any efforts to enforce same. Moreover, aside from the self-serving unsubstantiated testimony of the Plaintiff, there is no evidence or documentation to support a claim that the Letter ever had any impact on him whatsoever.

10. In summary, this was a one-time clerical error that was committed by ROJ alone and had no significant impact on the Plaintiff.

11. Presumably, the Plaintiff anticipates that he will further harass the Defendants by obtaining a sizeable judgment that will be dwarfed by an astronomical legal bill. Such a result would be draconian.

12. There are no material facts that the Plaintiff could genuinely and reasonably set before the Court to justify its aims.

13. The Defendants respectfully plead with the Court to put an end to the Plaintiff's relentless assault and grant summary judgment dismissing the instant action in its entirety.

**FACTUAL BACKGROUND**

14. In or around February, 2010 I opened Recovery Of Judgment, LLC ("ROJ") with my partner Shawn Porat ("Porat"). At that time, Porat and I were equal 50% partners. In or around 2015 I acquired 100% percent ownership of ROJ.

15. In addition, I am an attorney who is a solo practitioner. For business purposes I operate as "Law Offices Of J. Henry Nierman" however there is no distinct entity bearing that name.

16. At all times that I engaged in the practice of judgment execution, I did so on behalf of my company ROJ. I have never practiced judgment execution for any other third parties.

17. ROJ's basic method of operation was to have judgments assigned to ROJ and create a contractual relationship with the original (or prior) judgment creditor. At no time would ROJ be working on another party's judgment. Each judgment would be legally assigned to ROJ and belong to ROJ alone at any time that ROJ would be taking steps to execute the judgment.

18. There was never a relationship of any kind between JHN or LOJHN and the original judgment creditor. JHN (operating under the name LOJHN) would serve as counsel for ROJ and only ROJ. ROJ was

19. At the outset, Porat and I established a method for executing judgments that was designed to be efficient and effective while maintaining strict compliance with every element of the FDCPA as well as all local governing law.

20. To meet this end, first, I spent considerable time reviewing the entire FDCPA with Porat to ensure that he understood its regulations. Next, we created a business model to efficiently and legally conduct investigations of debtor assets. We created databases for each file that incorporated all relevant information about the subject judgment and a separate database

for each of the major banks in the New York area. Additionally, I implemented a database of forms that would regularly be needed. Standard legal forms that I created which complied with all governing regulations, could thereby be easily merged with our other databases to generate appropriate forms as needed.

21.     ROJ invested considerable resources to assure compliance with governing regulation, access to private information was limited to a need-to know basis.  Rigorous training programs were implemented with all ROJ employees so that they understood the importance of: i) strict compliance with the FDCPA; detailed understanding about New York collection law; iii) the importance of protecting and securing sensitive financial information; iv) the importance of treating debtors and clients with the utmost respect; and v) a thorough understanding as to how ROJ operated (hereinafter, collectively referred to as "ROJ Training").

22.     ROJ had written policies and protocols for its method of operation that were consistent with its practices outlined herein.  Every employee who received ROJ was given its policies and procedures which detailed the guidelines set forth in ROJ Training. For each trainee, ROJ Training took months to complete. I personally was involved in overseeing ROJ Training and regularly tested ROJ employees to ensure that ignorance would never lead them to falter in their duties.

23.     Judgment execution requires a great deal of work and paper generation. No company can possibly succeed unless it employs staff who are properly trained to follow the law and procedure.

24.     ROJ employed proper protocols under the FDCPA and supervised the work of its well-trained staff.  Our practices were a role model in the judgment execution industry.  This fine work was attested to in several ways.  Aside from its good standing with the Better Business Bureau, ROJ operated for six years with only other complaint of FDCPA violations in

5

its history. (That complaint was filed in or around 2011 and withdrawn by the Plaintiff with prejudice within weeks of its filing). Our business practices were so well regarded, that several unrelated third-parties retained ROJ's staff, including myself and Porat to educate them on healthy judgment execution practices.

25.     In or around 2010, Morrison approached ROJ regarding a judgment that he obtained against Shaul Levy (the "Judgment"). ( A copy of the Levy Judgment is annexed hereto and made a part hereof as Exhibit "B"). Shortly thereafter, the Judgment was legally assigned to ROJ. (A copy of the assignment is annexed hereto and made a part hereof as Exhibit "C".)  Under New York law, while the caption remained the same, ROJ became Levy's judgment creditor.

26.     The origin of the Judgment is highly significant to the underlying matter. The Judgment was entered in the City of New York County of New York, Part C.  The subject Part of the Civil Court referenced is the Housing Part of the Civil Court.

27.     Additionally, the Judgment was entered "Pursuant To Stipulation". Accordingly, the Plaintiff herein appeared either personally or via counsel to defend Morrison's claims and acquiesced to the entry of the Judgment against him.

28.     Based on the foregoing, it is evident that all of the Plaintiff's claims that the Judgment was"nonexistent" are completely false.

29.      What is even more disturbing is the fact that the Plaintiff's made multiple misleading allegations in his Complaint that were repeated yet again in a later motion for default. These deceptive statements were not made based on a lack of knowledge about the Judgment. This was not a default judgment which could feasibly have been entered without the Plaintiff being aware about its existence. The only way this Judgment could have been entered by stipulation would be if the Plaintiff had appeared in Court (in person and/or through counsel)

6

to try defending Morrison's claims and conceded that the Court should enter Judgment against him. Yet, Levy has unabashedly repeated to this Court his Bad Faith Claim.

30. In or around October 2016, Recovery Of Judgment agreed to sell all of its assets to a third party company (the "Sale Agreement" and the "Purchaser" respectively), including the judgments that had been assigned to ROJ.

31. Pursuant to the terms of the Sale Agreement, the benefits of the Levy Judgment were incorporated to the sale. Today, the Judgment is owned by ROJ, however, by contract, the benefits from the Levy Judgment belong to the Purchaser.

32. After executing the Sale Agreement, and prior to closing the sale, ROJ spent several months engaging in a transition process. During that period (the "Transition Period"), ROJ trained the Purchaser's staff in the art of undertaking efficient aggressive judgment execution while maintaining strict compliance with all applicable laws. That involved technical training which included having them "work" ROJ's judgments under the supervision of ROJ's staff.

33. During the Transition Period, on or about December 10, 2016 ROJ mailed a subpoena to Levy that included a cover letter (the "Letter"). The Letter was dated December 10, 2016 and postmarked December 13, 2016. The Letter, *inter alia*, directed Levy to appear for a post-judgment deposition on December 26, 2016 (the "Subpoena Date").

34. By statute, the Letter was required to contain language in bold letters warning the recipient that failure to respond to a subpoena could result in the imposition of fines or imprisonment. The Letter included the following language "**Please take notice that failure to comply with a properly issued subpoena entitles the Creditor to move the Court to impose sanctions on the debtor and request additional fines and/or imprisonment**." (Emphasis as

7

stated in Letter.)

35. There is almost no meaningful distinction between the bold words employed on the Letter and the warning requirements set forth in NYCRR 208.39. That statute requires the letter to state in bold lettering "**This subpoena requires your personal appearance at the time and place specified. Failure to appear may subject you to fine and imprisonment for contempt of Court**." The language used in the Letter was, if anything less threatening than the language required by statute. It is mysterious that the Plaintiff attempts to hold the Defendants liable both for issuing the warning that was presented in the Letter because it was purportedly too threatening, yet cites a purported second deficiency in the Letter that it did not contain the slightly more threatening wording presented by statute.

36. No follow-up was ever made by the Defendants to compel the Plaintiff's compliance with the mailed subpoena. No steps were ever taken by the Plaintiff to attempt to comply with the subpoena.

37. ROJ was never regularly in the business of serving subpoenas upon judgment debtors. Virtually all of ROJ's investigative efforts consisted of doing research upon judgment debtors through service of information subpoenas issued to third-parties and online tools that are commonly used in the industry.

38. Allegations that ROJ regularly served judgment creditors with subpoenas are not merely speculative and without basis, but completely contrary to fact.

39. The sale of ROJ's assets closed in or around January, 2017. Because it was an asset sale and not a sale of the company, upon closing, title to ROJ remained in my name.

## LEGAL ARGUMENT

40. None of the Defendants qualify as debt collectors under the FDCPA.

41. In *Henson v. Santander*, 200 U.S. 321 (2017) the United States Supreme Court ruled that parties who are in the business of regular acquiring debts that originated with third-party creditors do not qualify under the FDCPA as debt collectors and are not subject to the statute.

42. ROJ regularly acquired judgments that originated with third-parties.

43. Indeed, the subject Judgment was originally obtained by third-parties and acquired by ROJ. Pursuant to that acquisition, the Judgment was assigned to ROJ.

44. Based upon the foregoing, ROJ is not qualified as a debt collector in general or, specifically, in the instant matter and the first cause of action must be dismissed as against all Defendants.

45. Setting aside *Henson*, there is no basis in law or fact to attach liability to JHN or LOJHN.

46. Neither JHN or LOJHN participated in generating or mailing the Letter.

47. Neither JHN or LOJHN owned the judgment or stood to receive any personal benefit through the successful execution of the Judgment.

48. I did everything humanly possible to avoid any creditor being mistreated by ROJ and to ensure that ROJ maintained strict compliance with both Federal and State law.

49. Attaching personal liability to JHN or LOJHN for a one-time clerical error committed by ROJ would serve to wrongfully pierce the corporate veil without any legal basis.

50. Moreover, no viable legal theory has been proffered by the Plaintiff to attach liability against JHN or LOJHN.

51. The factual allegations asserted by the Plaintiff as they relate specifically to JHN

and LOJHN are set forth in paragraphs 18 through 21 of the Complaint. If the allegations were true, they would not give rise to a basis for piercing the corporate veil. All the more so is the case, when every specific allegation therein is false. Specifically:

    a. Paragraph 18 alleges that I shared an office with ROJ- ROJ, however, was located in Suite 612, I practiced law out of a different suite.

    b. Paragraph 19 alleges that ROJ shared a phone with the co-defendants- We never shared a phone. For fifteen years, no person who has every retained me to be their counsel has called me at any other number than (516) 523-3803. Any client or debtor who called ROJ, called a number with a 646 area code that was listed on the Letter. That phone was always answered by ROJ's office manager and not me.

    c. Paragraph 20 alleges that ROJ shares a website and email with the co-defendants- This too is untrue, nowhere on that website was there ever any reference to the LOJHN or offering my legal services to the public at large. The only reference to JHN was in his corporate capacity within ROJ.

    d. Paragraph 21 is a patently empty, baseless conclusory allegation that the Defendants are a "unified debt collection operation".

52. In short, the contact information on the Letter had no nexus to JHN personally or to LOJHN. The purpose of the Letter, when delivered to a proper addressee, was to provide judgment debtors with contact information that would direct them to ROJ and not to JHN or LOJHN.

53. When I saw the Letter, attached to the subject complaint, I was surprised it identified LOJHN altogether. All of our form Letters referenced ROJ and not LOJHN. *Subpoena duces tecum* was a vehicle that was rarely employed by ROJ because it was too costly. If I

missed an error in that one form, it is likely because that form was almost never employed.

54. A name on the Letterhead does not magically create unity of interest sufficient to pierce the corporate veil.

55. Aside from the different contact info that I maintained for my law practice, separate and apart from ROJ, we also strictly maintained separate bank accounts, separate escrow accounts and never once did those lines blur.

56. Every penny ever collected by ROJ, would be first deposited in ROJ's distinct bank account that was earmarked for funds to be held in escrow and distributed therefrom. Never once did any monies earned by ROJ, get paid directly to an account bearing my name or IOLA account.

57. The only evidence of supposed domination and control creating a "unity of interest" is the Letter that was a clerical error.

58. There is no legal basis to allege that one Letter justifies piercing the corporate veil. This is particularly true, when an individual maintains his law practice as a distinctly different entity from a company that he owns.

59. It is respectfully submitted that, based on the foregoing, summary judgment dismissing the complaint as to JHN and LOJHN must be granted.

60. Furthermore, the second cause of action based on a theory of GOL§349 must be dismissed.

61. That claim is reliant on and rooted in the Bad Faith Claim that ROJ was pursuing a non-existent judgment. The Plaintiff can no longer, in good conscience, allege that the Judgment is anything but genuine and remains unsatisfied to this day.

62. It is respectfully submitted that, based on the foregoing, summary judgment dismissing the second action of the Complaint must be dismissed as against all parties.

63. Furthermore, there is no legal entity LOJHN. That is an unregistered name that JHN has employed. Incorporating LOJHN as an additional named party is duplicative. It is respectfully urged that summary judgment dismissing the complaint as against LOJHN is granted and LOJHN be removed from the caption altogether.

64. Finally, it is respectfully urged that the complaint must be dismissed as against all parties, including ROJ despite the erroneous Letter.

65. There are two bases that ROJ should not be held liable.

66. The Letter, while it should not have been sent, at its worst, was an unenforceable subpoena.

67. Even if ROJ did not know better, and mistakenly believed that the law allowed this subpoena to be validly served on Levy in Florida via mail, that would not rise to an FDCPA violation. A mistake in the law may qualify as a bona fide error.

68. 15 USC §1692k(c) specifically states that a debt collector may not be held liable in an action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

69. Looking at the facts in the light most favorable to Plaintiff, ROJ intentionally mailed the Letter to Levy under the misguided belief that such service would be valid and enforceable. After issuing said mailing, the Defendants took no further steps to compel Plaintiff to comply with the subpoena. This is a one-time error resulting from a misunderstanding about the legal requirements prior to issuing a New York Judgment to an out of State resident.

70. By law, that does not rise to an FDCPA violation.

71. Moreover, as noted above, and in the Declaration of Vera Porat dated January 14, 2021 and annexed hereto, ROJ maintained proper protocols for executing judgments in

complete compliance with the FDCPA and all governing statutes.

72. ROJ took every step possible to ensure that errors like this would never occur.

73. It would be a gross miscarriage of justice to allow the Plaintiff, who has not suffered any damages that are measurable or remotely substantiated by evidence, to capitalize on this one-time error and attain a judgment against the Defendants.

74. At its worst, the Letter was an unenforceable attempt to issue a subpoena. At its best, the Letter was harmless error resulting from a bona fide mistake. In neither event, does that rise to an actionable violation of the FDCPA against any of the Defendants.

Based upon the foregoing, I respectfully urge the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure to grant summary judgment in favor of all the Defendants and dismiss the action as against said Defendants.

Sworn to before me this
\_\_\_ day of January, 2021

_____
Joseph Nierman

On January \_\_\_, 2021 Joseph Nierman, known to me, or having provided sufficient identification to verify the veracity thereof, appeared before me and executed, signed this Declaration.

_____
Notary Public