UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/8/2022
```

SHAUL LEVY,

                            Plaintiff,

     -against-

LAW OFFICES OF J. HENRY NIERMAN, J.
HENRY NIERMAN, AND RECOVERY OF
JUDGMENT, LLC,

                            Defendants.

No. 17-cv-4022 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Shaul Levy ("Levy" or "Plaintiff") commenced this action on May 30, 2017
against the Law Offices of J.Henry Nierman ("LOHN"), J. Henry Nierman, and Recovery of
Judgment LLC ("ROJ") (collectively, "Defendants"), alleging violations of the Fair Debt
Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the New York General Business
Law § 349 ("NYGBL § 349").  (*See* ECF No. 1 ("Compl.").)  Presently before the Court is
Defendants' motion for summary judgment seeking to dismiss all claims, and Plaintiff's cross-
motion for summary judgment seeking to impose liability on all claims.  (*See* ECF Nos. 85-1
("Defs.' Br."); 85-2 ("Defs.' Reply and Cross-Opposition");[1] 91 ("Pl.'s Opp. and Cross Br."); 92
(Pl.'s Cross-Motion Reply)).  For the reasons discussed below, Defendants' motion for summary
judgment is granted in part and denied in part and Plaintiff's cross motion for summary judgment
is granted in part and denied in part.  The Court dismisses Plaintiff's NYGBL § 349 claim as well
as Plaintiff's FDCPA Section 1692e(10) and f(1) claims, and grants summary judgment in
Plaintiff's favor on his FDCPA Section 1692e(5) and e(13) claims.

---

[1]      Defendants LOHN and ROJ, through their separate counsel, joined the motion papers submitted by Nierman,
filed *pro se*.  (*See* ECF No. 86-10, Barry Schneps Decl.)

# BACKGROUND

## I.      Factual Background

The facts below are taken from the complaint, the parties' Rule 56.1 statements,[2] affidavits, declarations, and exhibits, and are not in dispute except where so noted.  All rational inferences are drawn in the non-moving party's favor.

Plaintiff is an individual residing in Miami Beach, Florida.  (Pl.'s 56.1 ¶ 1.)  Defendant J. Henry Nierman ("Nierman") is a solo practitioner at the Law Office of J. Henry Nierman ("LOHN").[3]  Nierman was a co-founder and employee of ROJ.  (ECF No. 84-2 ("Nierman Decl.") ¶ 14.)  In or around 2015, Nierman became the 100% owner of ROJ.  (*Id*; Def's Opp. to Pl.'s 56.1 ¶¶ 7, 9.)  Through ROJ, Nierman practiced judgment execution, and many of the judgments brought to ROJ for execution were ultimately assigned to ROJ.  (Nierman Decl. ¶¶ 16–17.)

By letter dated December 10, 2016 and post-marked December 13, 2016, Plaintiff received, via regular mail at his Florida address, a letter (the "Letter") and purported post-judgment *subpoena duces tecum* (the "Subpoena"), which was issued in relation to a $13, 990.98 judgment awarded in a New York City Civil Court case, *Morrison v. Levy*, No. 056136/2010 ("*Morrison* Judgment").  (*See* Pl.'s 56.1 ¶ 11; ECF No. 88 ("Levy Decl."), Exhs. A–B.)  The Subpoena commanded Plaintiff to appear at a deposition before ROJ on December 26, 2016, a federal holiday, at 10:00 A.M. at an address in New York City and to bring comprehensive financial documentation, including "statements of bank accounts . . . debtor has maintained in the past five (5) years" and "all federal and state tax returns for the past five years." (Pl.'s 56.1 ¶¶ 16–18.)  The

---

[2]      Only Plaintiff filed a Rule 56.1 Statement.  (*See* ECF No. 88 ("Pl.'s 56.1").)  Defendants filed an Opposition to Plaintiff's 561. Statement, but not their standalone statement.  (*See* ECF No. 85-3 ("Def's Opp. to Pl.'s 56.1").)
[3]      Nierman states that "[f]or business purposes I operate as "Law Offices Of J. Henry Nierman" however there is no distinct entity bearing that name." (Nierman Decl. ¶ 15.)

Subpoena stated that failure to comply "is punishable as a contempt of court" and indicated "FINAL Notice" across each page.  (Levy Decl., Exh. B.)

Counsel for Plaintiff followed up with Nierman indicating that Plaintiff did not recognize the underlying action, and during a conversation on December 26, 2016, Nierman indicated that he would send the underlying court file.  (Compl. ¶ 42.)  Plaintiff's counsel followed up on the request via email on January 12, 2017, but Nierman did not respond.   (Compl. ¶¶ 43–44.) Plaintiff's counsel conducted an independent search and failed to identify the underlying action listed in the subpoena, and conferred with New York Civil and Supreme Court Clerk's office, who likewise could not identify the underlying action.  (Id. ¶¶ 45–46.)[4]

Vera Porat, ROJ's office manager at the time that the Letter and Subpoena were sent, submitted a sworn declaration stating that she was responsible for having prepared the Letter and Subpoena, and never had it reviewed by Nierman or LOHN.  (See ECF No. 84-1 ("Porat Decl.") ¶¶ 17, 21).  She explains that the Letter and Subpoena were sent out during a busy period when she was training staff for WAK Enterprises, LLC ("WAK"), an entity that had agreed to take over ROJ's assets.  ((id. ¶¶ 12–13, 15.)  Nierman avers that even though WAK has now taken over ROJ's assets, ROJ remains under his name.  (See Nierman Decl. ¶ 39.)

## II.    Procedural Background

On September 15, 2017, Plaintiff submitted a request for an entry of default against Defendants after they failed to timely respond to the Complaint, and the Court issued an Order to Show Cause for Default Judgment on March 15, 2018. (ECF Nos. 19 & 27.)  On April 20, 2018,

---

[4]    Defendants argue that the *Morrison* Judgment does exist.  (*See* Defs.' Br. at 7.)  In his submissions, Defendants attach a Transcript of Judgment signed by a New York Civil Housing Court judge (ECF No. 84-4) and a sworn Acknowledgement of Assignment of Judgment (ECF No. 84-5) pertaining to the *Morrison* Judgment.  In his answer to Defendants' counterclaim, Plaintiff states he received a copy of a document that purports to be the *Morrison* Judgment but "lacks knowledge or information sufficient to form as belief as to whether the judgment was properly filed and docketed by the Clerk of Court and was or remains valid and enforceable."  (*See* ECF No. 47 ¶ 42.)

the Court held a show cause hearing on Plaintiff's motion for default judgment at which the Court ordered defense counsel to file appropriate appearances for each Defendant and required Defendants to file a motion seeking leave to file an answer by May 4, 2018. The show cause hearing was adjourned to May 31, 2018.  Following the show cause hearing and briefing on Plaintiff's default judgment motion, the Court found good cause to set aside the entries of default against the Defendants.  *See Levy v. Nierman*, No. 17-CV-4022 (NSR), 2019 WL 147462, at *2 (S.D.N.Y. Jan. 8, 2019).

On November 6, 2020, Defendants sought and were granted leave to file a summary judgment motion, and Plaintiff sought leave to file a cross-summary judgment motion.  The parties completed their briefing on April 30, 2021.

## STANDARD OF REVIEW

### I.    Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order).  Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record.  *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility.  *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).  Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial."  *Anderson*, 477 U.S. at 250.  Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice.  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation") (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

## DISCUSSION

Defendants moved for summary judgment to dismiss Plaintiff's FDCPA and NYGBL § 349 claims, arguing that both claims fail on the merits.  (*See* Defs.' Br. and Defs.' Reply and Cross-

5

Opposition.) Plaintiff cross-moved for summary judgment, seeking liability on his claims that Defendants violated FDCPA Sections 1692e(5), e(10), and e(13) and Section 1692f(1).  (*See* Pl.'s Opp. and Cross Br. at 1-2.)  Plaintiff also seeks summary judgment on his NYGBL § 349 claim relating to Defendants' conduct.  (*Id*. at 2.)

For his FDCPA claim, Plaintiff seeks statutory damages of up to $1,000, actual damages based on emotional harm, and attorneys' costs.  (Compl. ¶ 53.)  For its NYGBL § 349 claim, Plaintiff seeks an injunction against Defendants sending out subpoenas of the type received by Plaintiff to any consumer via regular mail, and an injunction against sending out inaccurate subpoenas, as well as three times the actual damages up to $1,000.  (Compl. ¶ 63.)

For the reasons articulated below, the Court finds that Defendants are liable under Sections 1692e(5) and e(13), but dismisses Plaintiff's claims under Sections 1692e(10) and 1692f(1).

## I.      THE FDCPA

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To achieve this, the FDCPA imposes, "among other things, certain notice and timing requirements on efforts by 'debt collectors' to recover outstanding obligations." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 58 (2d Cir. 2004).  Section 1692k of the FDCPA provides that "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person ...."  15 U.S.C. § 1692k.

Moreover, a single violation is sufficient to establish liability under the FDCPA.  *Wiener v. Bloomfield*, 901 F. Supp. 771, 778 (S.D.N.Y. 1995) (citing *Clomon v. Jackson*, 988 F.2d 1314,

1318 (2d Cir.1993). "The court considers the frequency or number of violations only in calculating damages." *Id*. (citing 15 U.S.C. § 1692k(b)(1)). "The court may not, however, regardless of the number of violations, impose more than the $1,000 statutory penalty provided for actions such as these in the absence of actual damages." *Id*. (citing 15 U.S.C. § 1692k(a)(2)(A)).

To state a claim under the FDCPA, a plaintiff must demonstrate that: (1) the plaintiff is a person who was the object of efforts to collect a consumer debt; (2) the defendant is a debt collector as defined in the statute; and (3) the defendant has engaged in an act or omission in violation of the FDCPA. *See Cohen v. Ditech Fin. LLC*, 15-CV-6828, 2017 WL 1134723, at *3 (E.D.N.Y. Mar. 24, 2017). Plaintiff avers that Defendants violated Sections 1692e(5), e(10), and e(13), and 1692(f)(1) of the FDCPA. *See* Compl. ¶ 51.[5]

The first requirement, that the Plaintiff was an object of collection efforts, is not in dispute here. Instead, Defendants argue that (1) the Defendants were not "debt collectors" under the FDCPA; (2) that Nierman and LOHN were not involved in creating and distributing the unlawful communications to Plaintiff; (3) that the offending Letter and Subpoena did not violate the FDCPA; and (4) that questions of fact exist surrounding Defendants' asserted bona fide error defense.

For the reasons articulated below, the Court finds liability against Defendants under Sections 1692e(5) and e(13), but dismisses Plaintiff's Section 1692e(10) and Section 1692(f)(1) claim.

### A.  Whether Defendants Are Debt Collectors Under the FDCPA

---

[5]     Plaintiff also alleged violations of Section 1692e(2) of the FDCPA in his Complaint, but appears to have abandoned that claim as it is neither mentioned or argued upon in his motion papers. (*See* Pl.'s Opp. and Cross Br. and Cross-Motion Reply.)  Section 1692e(2) imposes liability for false representations regarding the character, amount, or legal status of any debt. *See* 15 U.S.C. §1692e(2).

A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692 (a)(6). The "FDCPA establishes two alternative predicates for "debt collector" status—engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d. Cir. 2004).  Thus, a company can fall under the scope of the definition if (1) its principle purpose is debt collection or (2) it regularly attempts to collect debts directly or indirectly.

Defendant ROJ argues that it is not a "debt collector" under the FDCPA. (Defs.' Br. at 1.) Citing to *Henson v. Santander*, 200 U.S. 321 (2017), Defendant ROJ avers that because it merely collects debts that it purchases, and does not collect debts on behalf of other entities, it therefore cannot be considered a "debt collector."  (*See id*. (citing *Henson v. Santander*, 137 S. Ct. 1718, 1721 (2017)) (holding that a creditor that collected debt for itself is not a "debt collector" because the FDCPA defines "debt collector" as one that "regularly collects or attempt to collect ... debts owed or due ... another.").)  However, as Plaintiff correctly argues, Defendant ROJ's reliance on *Henson* is misplaced, as the Supreme Court in that case acknowledged an alternative definition of "debt collector"—one that encompasses those engaged "in any business the principal purpose of which is the collection of any debts."  *Henson,* 137 S. Ct. at 1721.

Courts in this Circuit, both before and after *Henson*, have held that an entity can be considered a "debt collector" if debt collection is its principal purpose of business.  *See Stinson v. Houslanger & Assocs., PLLC*, No. 18-CV-11350 (JPO), 2020 WL 5569582, at *5 (S.D.N.Y. Sept. 17, 2020) ("courts have long recognized another definition under the FDCPA that covers entities

that engage in debt collection as the principal purpose of their business"); *Goldstein*, 374 F.3d at 61 (recognizing "two alternative predicates" for debt collector status); *Page v. Forster & Garbus, LLP*, 2019 WL 5696108, at *5 (E.D.N.Y. June 17, 2019) (noting that, after *Henson*, courts have continued applying the principal purpose test); *see, e.g., Guzman v, Mel S. Harris and Assocs., LLC*, 2018 WL 1665252, at *4 (S.D.N.Y. Mar. 22, 2018) (applying the principal purpose test after *Henson*).

Based on Defendants' own submissions, it is clear that ROJ's principal business was debt collection, and therefore, it must necessarily qualify as a "debt collector" under the statute.  *See* Nierman Decl. ¶ 17("ROJ's basic method of operation was to have judgments assigned to ROJ and create a contractual relationship with the original (or prior) judgment creditor . . . Each judgment would be legally assigned to ROJ and belong to ROJ alone at any time that ROJ would be taking steps to execute the judgment."); Porat Decl. ¶ 3 ("ROJ was in the business of judgment execution on behalf of third parties.").

Nierman and LOHN also argue that they are not debt collectors and that therefore Plaintiff's FDCPA claims should be dismissed as against them.  (*See* Defs.' Reply and Cross-Opposition at 2.)  Nierman and LOHN argue that, though Nierman's signature appeared on the Letter and though the Letter was sent on LOHN's letterhead, that "Nierman and LOJHN never sent any collection letters or delivered litigation papers of any kind to anybody" and that "[a]ll correspondences from ROJ even those that bore letterhead of LOJHN or Nierman's signature, were sent by ROJ and for ROJ's sole benefit." (*Id.*)

The Court, however, finds that Nierman and LOHN should be considered "debt collectors" alongside ROJ.  Nierman concedes in his declaration that "JHN [Nierman] (operating under the name LOJHN) would serve as counsel for ROJ and only ROJ."  (Nierman Decl. ¶ 18.)  In light of

this concession, both Nierman and LOHN, by extension, are debt collectors given their sole services to ROJ.  *See Cacace v. Lucas*, 775 F. Supp. 502, 504 (D. Conn. 1990) ("An attorney who regularly collects debts is a debt collector within the meaning of the "FDCPA".); *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity"); *see also Polanco v. NCO Portfolio Mgmt., Inc*, 132 F.Supp.3d 567, 580 (finding that in some circumstances persons who assist in debt collection can be liable as "debt collectors "particularly where, as here, the third party entities worked pursuant to governing procedures provided by the debt collector.").

Notably, "an attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process, so long as that letter includes disclaimers that should make clear even to the 'least sophisticated consumer' that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney." *Greco v. Trauner, Cohen & Thomas, L.L.P*., 412 F.3d 360, 364 (2d Cir. 2005); *Altieri v. Overton, Russell, Doerr, & Donovan, LLP*, 281 F. Supp. 3d 254, 261, 264 (N.D.N.Y. 2017) (holding that a clear disclaimer that no attorney had personally reviewed the consumer's case was a sufficient disclaimer).  Here, however, there is no disclaimer in the Letter or Subpoena sufficient to provide clarity to the "least sophisticated consumer" that either Nierman or LOHN were not acting as attorneys.

### B.  Whether Defendants Nierman and LOHN Are Each Liable For The Unlawful Communications to Plaintiff

Both Defendant Nierman and LOHN argue that even if they are considered "debt collectors," neither was responsible for the Letter and Subpoena sent to Plaintiff, nor did they purportedly review the items before they were sent.  (Defs.' Reply and Cross-Opposition at 2.) Instead, Defendants offer a sworn affidavit from ROJ's office manager, Vera Porat, where she

takes the blame for having sent the Letter and Subpoena (*see* Porat Decl. ¶ 22 ("I regret that the Letter was mailed to [Plaintiff]")) and states that she never reviewed Plaintiff's file or the items that were mailed with Defendants Nierman or LOHN. (*Id.* ¶ 22.)

However, even if Nierman and LOHN did not directly send out the Letter or Subpoena, they authorized ROJ employees to use their letterhead and signature without their review. (*See* Nierman TR. at 70:18–71:8.)[6] Therefore, both Nierman and LOHN can be held liable for the communications sent to Plaintiff. *See, e.g., Kistner v. L. Offs. of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (finding that attorney could be held liable as a "debt collector" for Section 1692e violations when communications bore his signature and law firm's letterhead even if he alleged he did not review documents that were sent to consumer).

### C. Whether the Letter and Subpoena Violated the FDCPA

The Complaint specifically alleges violations of Sections 1692e(5), e(10), and e(13), and Section 1692(f)(1) of the FDCPA.[7] Plaintiff argues that the Subpoena was unenforceable because: (i) New York law makes service of a subpoena upon an out-of-state judgment debtor void[8]; (i) it

---

[6]     As Plaintiff correctly points out, Nierman and LOHN's decision to allow documents under their name and signature to be sent by ROJ without their review may have violated Section 1692e(3) of the FDCPA, which specifically prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." (Pl.'s Cross-Motion Reply at 3–4.) *See* 15 U.S.C. § 1692e (3); *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-CV-7539 (MKB), 2016 WL 1274541, at *4 (E.D.N.Y. Mar. 31, 2016). Notably, Plaintiff does not raise a Section 1692e(3) claim in their Complaint, so the Court will not consider that provision for liability purposes, but nonetheless finds it helpful when considering whether Nierman and LOHN should be liable for the Section 1692e violations alleged in this instant action.

[7]     Section 1692e(5) makes debt collectors liable for threatening to take any action that cannot legally be taken or that is not intended to be taken. *See* 15 U.S.C. §1692e(5). Section 1692e(10) prohibits debt collectors from using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. *See* 15 U.S.C. §1692e(10). Section 1692e(13) prohibits debt collectors from making the false representation or implication that documents are legal process. Lastly, Section 1692(f)(1) states that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt" with respect to "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *See* 15 U.S.C. §1692f(1).

[8]     *See Alfred E. Mann Living Tr. v. ETIRC Aviation S.a.r.L.*, 55 Misc. 3d 1211(A), 58 N.Y.S.3d 873 (N.Y. Sup. Ct. 2010) ("A subpoena served upon a defendant outside the State of New York is void[.]"); *Israel Discount Bank,*

was improperly served because it was sent via regular mail rather than in the same manner as a summons under N.Y. C.P.L.R. 2303; (ii) it required a deposition date that fell on December 26, 2016, a federal holiday, in violation of N.Y. C.P.L.R. 5224(c); (iii) it was not timely under N.Y. C.P.L.R. 5224 because it arrived to Plaintiff with less than 10 days' notice of the supposed deposition date; and (iv) it lacked the statutorily required language set forth in 22 NYCRR § 208.39. (*See* Pl.'s Opp. and Cross Br. at 2, 12–13.)

Defendants concede that the Subpoena was unenforceable, particularly because service was improper and because the December 26, 2016 deposition date was defective, but argue that there is nonetheless no FDCPA violation. (*See* Defs.' Br. at 5–6; Defs.' Reply and Cross-Opposition at 5–6.)

The Court will discuss Plaintiff's Sections 1692e and 1692f claims in turn.

### 1.  Section 1692e

Section 1692e of the FDCPA prohibits a debt collector from making a "false, deceptive, or misleading representation." 15 U.S.C. § 1692e. "It is well established that the FDCPA imposes strict liability on debt collectors," meaning that Plaintiff "need not prove that the prohibited conduct was intentional." *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 528 (S.D.N.Y. 2013); *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir.2010) ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996) ("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages.").

---

*Ltd. v P. S. Products Corp.*, 65 Misc 2d 1002, 1004, 319 N.Y.S.2d 554 (N.Y. Sup. Ct. 1991) ("service of the subpoena upon judgment debtor without the State is void").

In the Second Circuit, two principles of statutory construction guide courts' assessments of alleged violations of Section 1692e: (1) the FDCPA is liberally construed to effectuate its purpose of consumer protection, and (2) collection notices are analyzed from the perspective of the "least sophisticated consumer." *Taylor v. Fin. Recovery Servs.*, 886 F.3d 212, 214 (2d Cir. 2018) (internal citation omitted). The least sophisticated consumer test is an objective one that "pays no attention to the circumstances of the particular debtor in question." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012). Despite the name, the least sophisticated consumer is not wholly unsophisticated; they are "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Kolbasyuk v. Capital Mgmt. Servs. LP*, 918 F.3d 236, 239 (2d Cir. 2019) (internal quotations and citation omitted). Applying the standard of the least sophisticated consumer, a debt collector's representation is misleading or deceptive "if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Avila v. Riexinger & Assocs.*, LLC, 817 F.3d 72, 75 (2d Cir. 2016) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)). There is also a materiality requirement, where courts focus[] on whether the false statement would frustrate a consumer's ability to intelligently choose his or her response." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 86 (2d Cir. 2018) ("[M]ere technical falsehoods that mislead no one are immaterial and consequently not actionable under § 1692e.") *Id.* (internal quotations and citations omitted).

The Court first notes that it is unclear whether there is indeed a valid *Morrison* Judgment. Defendants insist that there is one, and in their submission, attach a Transcript of Judgment signed by a New York Civil Housing Court judge (ECF No. 84-4) and a sworn Acknowledgement of Assignment of Judgment (ECF No. 84-5) pertaining to the underlying case. Plaintiff, at least in the Complaint, states that he is not aware of such Judgment and that his counsel called the clerk's

office, who could not identify a case by the docket number indicated in the Subpoena (has the same docket number appearing in the Transcript of Judgment and Acknowledge of Assignment of Judgment). (*See* Compl. ¶¶ 41–47.) In his Answer to Defendants' counterclaim, however, Plaintiff admits that he received a copy of a document that purports to be the *Morrison* Judgment against Plaintiff but "lacks knowledge or information sufficient to form a belief as to whether the judgment was properly filed and docketed by the Clerk of Court and was or remains valid and enforceable." (*See* ECF No. 47 ¶ 42.) Plaintiff has not made any affirmative statement in his motion papers confirming or denying the existence of a valid *Morrison* Judgment.

Even assuming that there is a valid *Morrison* Judgement, the Court finds that the Letter and Subpoena violated Section 1692e, particularly as Defendants conceded that the Subpoena was unenforceable. *See supra*. Generally speaking and as Plaintiff correctly argues, a least sophisticated consumer receiving the Subpoena, which states "Final Notice" across all pages, would have understood that that he/she would have to comply with its appearance and document production requests or else face court-imposed punishment. (*See* Pl.'s Opp. and Cross Br. at 11; Levy Decl., Exh. B. at 7) ("failure to comply with this subpoena is punishable as a contempt of court."). Certainly, the Subpoena would have also influenced a least sophisticated consumer regarding their ability to respond or dispute the collection. *See Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 360 (E.D.N.Y. 2013) ("A misrepresentation is material if it could mislead a putative-debtor as to the nature and legal status of the underlying debt or . . . could impede a consumer's ability to respond to or dispute collection.").

Starting with Section 1692e(5), Defendants are liable if they used a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). A false threat exists where the least sophisticated consumer "would interpret the [debt collector's]

language to mean that legal action was authorized, likely, and imminent." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993). Here, it is clear that the Subpoena threatens imminent legal action, as it commanded Plaintiff to appear before a deposition on short notice and produce documents for examination, and indicated that failure to comply with the Subpoena is punishable as a contempt of court. (*See* Levy Decl. Exh. B.) Moreover, after Plaintiff's counsel called Nierman to ask about the underlying action, there is no indication in the record that Nierman took any action to confirm that the subpoena was not enforceable and that it could be disregarded, and instead he indicated that he would follow-up with the court file. (*See* Compl. ¶¶ 42–44.) Therefore, the Court finds a violation of Section 1692e(5). [9]

The Court also finds that the Subpoena violates Section 1692e(13), which prohibits falsely representing that documents are legal process. The Subpoena is captioned in the formatting typically used to file documents in New York City Civil Court (*see* Levy Decl., Exh. B), and therefore, a least sophisticated consumer would have the impression that legal process is upon him. *See Wiener*, 901 F. Supp. at 777 ("the Act prohibits also the use of documents that merely "simulate" documents authorized by a court."); *id.* at 776 (a least sophisticated consumer "would assume that the imposing and formal-looking court documents, with prescribed dates for returning an acknowledgment of receipt and double-underscored warnings that false statements or forged signatures on the acknowledgment are punishable as crimes, were in fact legal process."). In addition, the Subpoena compels compliance and threatens punishment for contempt of court. (Levy Decl., Exh. B) *See In re Murray*, 552 B.R. 1, 7 (Bankr. D. Mass. 2016) ("The term process

---

[9]     Defendants argue that this case is analogous to *Wagner v Chiari & Ilecki, LLP*, 973 F.3d 154, 166–67 (2d Cir. 2020), where, *inter alia*, the Court dismissed a Section 1692e(5) claim after determining that the defendant had legal authority to pursue a collection of debt, but had attempted to collect the debt from the wrong person. That case is distinguishable, however, because here, Defendants continue to allege that there is a valid Judgment upon Plaintiff, and do not claim mistaken identity of the debtor. In addition, Defendants' Subpoena, whether intentionally or mistakenly, was unenforceable because, among other reasons, it was improperly served and required Plaintiff to appear for a deposition on short notice and on a federal holiday.

generally has been more broadly defined as "the means whereby a court compels compliance with its demand.").

However, with respect to Section 1692e(10), which prohibits the making of false representations and deceptive means to collect or attempt to collect any debt, the Court finds that Plaintiffs have not established such violation.  Plaintiff attempts to argue that the issuance of the unenforceable and legally faulty Subpoena itself is a "false representation and deceptive mean," but points to no language that was actually false or deceptive.  *See, e.g., Starosta v. MBNA America Bank, N.A.*, 244 Fed. App'x. 939, 941 (11th Cir. 2007) (dismissing § 1692e(10) FDCPA claim because "the issue ... is not whether Borack is in compliance with Florida state law, the issue is whether Borack's law office made a false or misleading communication in violation of the FDCPA ...").  The Court finds that the numerous errors surrounding the Subpoena are sufficiently addressed under Sections 1692e(5) and e(13).

### 2.  Section 1692f(1)

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt any debt." 15 U.S.C. § 1692f.  "Unconscionable" means "shockingly unjust or unfair" or "affronting the sense of justice, decency, or reasonableness."  *Gallego v. Northland Group, Inc.*, 814 F.3d 123, 127–28 (2d Cir. 2016).  Plaintiff specifically raises a Section 1692f(1) claim (*see* Compl. ¶ 51), which prohibits debt collectors from attempting to collect amounts not authorized by any agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

The Court finds that Plaintiff's Section 1692f(1) claim must be dismissed.  Plaintiff does not meaningfully argue that he establishes a violation under Section 1692f(1).  Plaintiff only rehashes his pleading from his Complaint where he states that Section 1692f(1) was violated by Defendants for "[a]ttempting to collect amounts not authorized by any agreement creating the debt

or permitted by law." (*See* ECF No. 92 at 6; Compl. ¶ 51.)  *See Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 711–12 (S.D.N.Y. 2013) (dismissing Section 1692(f)(1) claim because plaintiffs failed to provide any evidence or case law to support their claim).

In any event, the Court finds that Plaintiff does not establish that Defendants have engaged in "shockingly unjust or unfair" conduct meriting liability under this section.  Courts in this Circuit have found that "a debt collector engages in unfair or unconscionable litigation conduct in violation of Section 1692f when . . . it in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing." *Wagner*, 973 F.3d at 167–68 (citing *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 138 (2d Cir. 2017)).  Though the Letter did direct Plaintiff to appear at a deposition purportedly scheduled for December 26, 2016 and to respond to a subpoena, (*see* ECF No. 90, Exhs. A and B), Plaintiff was not forced to respond or attend.  This is evident by the undisputed fact that Plaintiff's counsel emailed Defendants on January 12, 2017 to follow-up on the underlying case (*see* Compl. ¶¶ 42–44) but received no response, and the lack of any indication that Defendants attempted to enforce the subpoena.  *See* Nierman Decl. ¶ 69 ("After issuing said mailing, the Defendants took no further steps to compel Plaintiff to comply with the subpoena."); *see also Wagner*, 973 F.3d at 167 ("[Plaintiff] was never forced to attend a debtor's examination or to respond to the information subpoena, however, and [defendant] ultimately agreed to hold the *subpoena duces tecum*—which incorporated the restraining notice—in abeyance.").

### D.  Whether the Defendants Can Invoke the Bona Fide Error Defense

In order to avoid liability under the FCPDA, Defendants insist that Plaintiff's complaint turns on a "clerical error," and therefore, Defendants should be able to avail themselves of the bona fide error defense.  (*See* Defs.' Reply and Cross-Opposition at 6–7.)  Defendants concede that the

Subpoena is unenforceable because there were defects in its service and that there was an improper date set for the deposition.  (*See* Defs.' Br. at 5.)   As discussed below, Defendants, by their own submissions, cannot establish a bona fide error defense.

Although the FDCPA is a strict liability statute, the Act "affords a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense." *Thomas v. Altschul*, No. 13 CIV. 8320 RA, 2015 WL 5165334, at *2 (S.D.N.Y. Aug. 21, 2015).  To avail themselves of this defense, Defendants must prove that: "(1) the presumed FDCPA violation was not intentional; (2) the presumed FDCPA violation resulted from a bona fide error; and (3) that [Defendants] maintained procedures reasonably adapted to avoid any such error." *Cerrato v. Solomon & Solomon*, 909 F.Supp.2d 139, 147 (D. Conn. 2012) (citing *Kort v. Diversified Collection Services*, 394 F.3d 530 (7th Cir. 2005)).  The procedures need not be "fool proof," but must constitute a "reasonable precaution" to avoid the error at issue.  *Id*. at 148 (internal quotation and citation omitted). "[T]he mere existence of generic procedures is not enough; instead, the debt collector must show . . . that it took precautions meant to eliminate the specific error complained of by the plaintiff." *Thomas,* 2015 WL 5165334, at *2.  The bona fide error defense is an affirmative defense, and the defendant bears the burden of proving its elements at trial by a preponderance of the evidence.  To survive summary judgment, a defendant must make a showing sufficient to establish the existence of, or at least a factual question as to, every element of the defense.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 327.

The parties spend a lot ink disputing whether Defendants adequately maintained policies on the FDCPA.  The pertinent question, however, is whether Defendants maintained procedures reasonably adapted to prevent the specific issue here—sending out an out-of-state subpoena on

LOHN's letterhead and signed by Nierman that was defective in its service and that set an improper date for a deposition.

In her sworn statement, ROJ's office manager Vera Porat testifies that (i) mailing a "*subpoena duces tecum* was never part of ROJ's normal process . . . . [t]hat is not how ROJ ever operated . . ." (Porat Decl. ¶ 21); and (ii) judgments with debtors residing outside of New York "were either farmed out to third-parties in local jurisdictions, or the case was rejected altogether by ROJ." (Porat Decl. ¶ 7.) Ms. Porat states that "the Letter should have never been mailed" (*id*. ¶ 20), that she "regrets that the Letter was mailed to [Plaintiff]" (*id*. ¶ 21), and that the Letter and Subpoena were sent during a period where ROJ's business operations were winding down and she was busy training staff for WAK. (*Id*. ¶¶ 12–13, 15.)

What is problematic here, however, is that the Letter was on LOHN's letterhead and both the Letter and Subpoena had Nierman's signature, yet Ms. Porat admits that (i) she "never reviewed [Plaintiff's] file with [Nierman] and [LOHN], nor the Letter that was mailed" (*id*. ¶ 17); and that (ii) ROJ's workload "did not enable [Nierman] to review every letter or document that went out of ROJ's office." (*Id*. ¶ 8.). Nierman also makes similar admissions that he did not review or had a system to review documents that went out the door bearing his signature. (*See* Nierman TR. at 71:9–15, 77:20–78:24, 123:20–22.) It is therefore clear that Defendants had no policies or procedures in place requiring attorney review of legal debt collection correspondence sent to consumers, nor any policy or procedure in place to error check for the mailing of an unauthorized subpoena to an out-of-state recipient. *See Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008) ("The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. . . . Only then is the mistake entitled to be treated as one made

in good faith."). Therefore, Defendants fail to establish that they are entitled to a bona fide error defense.

Moreover, in his affidavit, Nierman argues on behalf of ROJ (though ROJ is represented by separate counsel) that "[e]ven if ROJ did not know better, and mistakenly believed that the law allowed this subpoena to be validly served on Levy in Florida via mail, that would not rise to an FDCPA violation. A mistake in the law may qualify as a bona fide error." (*See* ECF No. 86-2, Nierman Aff. ¶ 67.). This is patently incorrect, as it well established that a bona fide error defense *cannot* protect mistakes of law. *See Castro*, 959 F. Supp. 2d at 715 (The Supreme Court recently held that a debt collector cannot escape liability under the bona fide error defense due to a mistake of law . . .") (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010)).

## II.    NYGBL § 349 VIOLATION

Plaintiff also brings a cause of action against all Defendants under New York Gen. Bus. Law § 349 ("NYGBL § 349"). (Compl. ¶¶ 54–63.) In order to establish a NYGBL § 349 violation, Plaintiff must show that the Defendants engaged in (i) a consumer-oriented act or practice that (ii) was deceptive or misleading in a material way and (iii) that Plaintiff was injured by reason thereof. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Unlike the FDCPA, NYGBL § 349 is not a strict liability statute. *See Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 265 (E.D.N.Y. 2012), *order amended on reconsideration*, No. CV 10-3983 AKT, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013).

The Court finds that the NYGBL § 349 claim against the Defendants must be dismissed because Plaintiff fails to establish that the conduct complained of was "consumer-oriented." "[A] plaintiff establishes consumer-oriented conduct by showing that the act or practices have a broader

impact on consumers at large in that they are directed to consumers or that they potentially affect similarly situated consumers." *Sanchez v. Abderrahman*, No. 10-CV-3641 CBA, 2012 WL 1077842, at *9 (E.D.N.Y. Mar. 30, 2012).  "In other words, the deceptive act or practice may not be limited to just the parties." *Thomas*, 2015 WL 5165334, at *4 (citing *Teller v. Bill Hayes, Ltd.,* 630 N.Y.S.2d 769, 772 (2d. Dep't 1995). "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Id*. (citing *Marine Midland Bank*, 85 N.Y.2d at 25).

Here, the record fails to show that the dispute here is beyond anything unique to the parties. Defendants make a point in the declarations in stating that the error that gave rise to the Complaint was a "one-time" error, and that the sending out of out-of-state subpoenas should have never occurred. (*See* Porat Decl. ¶¶ 28–29.)  *See Thomas*, 2015 WL 5165334, at *4 (dismissing NYGBL § 349 claim where Plaintiff fail to show that conduct "had ever occurred before or was likely to occur again, or that anyone other than Plaintiff was or would be affected by such conduct.").

Plaintiff argues that Defendants' "conduct was not a unique, one-time occurrence" because "[i[t involved misleading boilerplate documents sent by a high-volume debt collector to consumers." (*See* Pl.'s Opp. and Cross Br. at 18.)  While Defendants do not dispute that they were engaged in high-volume, form-based collections, the conduct at issue here was the sending out of a *subpoena duces tecum* to an out-of-state debtor.  Defendants aver that it is not their practice to send out out-of-state judgments or *subpoena duces tecums*.  (*See* Porat Decl. ¶ 6 ("Any cases that did not fit these parameters [judgments to debtors residing in New York] were either farmed out to third-parties in local jurisdictions, or the case was rejected altogether by ROJ."); *id*. ¶ 21 ("Mailing out a *subpoena duces tecum* was never part of ROJ's normal process. That is not how

ROJ ever operated . . ."); Nierman Decl. ¶ 53 ("*Subpoena duces tecum* was a vehicle that was rarely employed by ROJ because it was too costly.")).

In addition, Plaintiff fails to show, as he must, that Defendants' conduct had "a broader impact on consumers at large" because there is no showing that "the same or similar actions [of defendants] are potentially (and quite likely) directed toward numerous other consumers." *Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 CV 5449 (NSR), 2015 WL 7758894, at *14 (S.D.N.Y. Dec. 1, 2015) (internal citation omitted), *order corrected on denial of reconsideration*, No. 14 CV 5449 (NSR), 2016 WL 828130 (S.D.N.Y. Feb. 25, 2016); *see, c.f. Allstate Inc. v. Lyons*, 2012 WL 517600, at *11 (E.D.N.Y.2012) (holding that non-consumer defendant's alleged scheme to defraud insurance company of millions of dollars was consumer-oriented conduct because it was bound to raise premiums for consumers of insurance).

Because Plaintiff fails on the first element of his NYGBL § 349 claim, the Court need not consider the remaining elements.

## III.    Damages

In his Complaint, Plaintiff seeks statutory damages, as well as actual damages (based on emotional harm) and attorney's costs and fees.   (Compl. ¶¶ 51–52).

The decision on whether to award statutory damages and on the size of any such award is committed to the sound discretion of the district court.  *Garcia v. L. Offs. Howard Lee Schiff, P.C.*, 401 F. Supp. 3d 241, 256–57 (D. Conn. 2019) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993).  "In setting the appropriate level of statutory damages, the FDCPA directs the court to consider the following factors: 'the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional,' as well as any other factors that are relevant." *Weiss v. Zwicker & Assocs., P.C.*, 664

F. Supp. 2d 214, 218 (E.D.N.Y. 2009) ((quoting *Sparkman v. Zwicker & Associates, P.C.*, 374 F.Supp.2d 293, 302 (E.D.N.Y. 2005) and 15 U.S.C. § 1692k(b)(1)).  Based on the Court's finding that Defendants violated FDCPA Section 1692e(5) and e(13) claims, the Court will award statutory damages under 15 U.S.C. § 1692k(a)(2)(A) in a total amount of **$500.00**.  The Court finds that this amount is adequate considering that Defendant's violation was purportedly unintentional, and Plaintiff's claim arises out of one incident.  *See, e.g., Cole v. Truelogic Financial Corp.*, 2009 WL 261428, *2 (W.D.N.Y.2009) (awarding $500 for a FDCPA violation arising out of a single phone call to a consumer); *Garcia v. L. Offs. Howard Lee Schiff, P.C.*, 401 F. Supp. 3d 241, 257 (D. Conn. 2019) (awarding $500.00 in FDCPA statutory damages arising out of receipt of one non-threatening letter containing an unintentional mistake.); *Savino v. Computer Credit, Inc*., 164 F.3d 81, 86 (2d Cir. 1998) (affirming award of $500.00 in statutory damages under FDCPA based on violation arising from one letter.)

The remaining issue of emotional damages will be referred to Magistrate Judge Judith C. McCarthy for an inquest.  The Court also refers the issue of attorney's fees and costs to the Judge McCarthy.[10]

## CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment is granted in part and denied in part and Plaintiff's cross motion for summary judgment is granted in part and denied in part.  The Court DISMISSES Plaintiff's NYGBL § 349 claim as well as Plaintiff's Section 1692e(10) and f(1) claims, and GRANTS summary judgment in Plaintiff's favor on his Section 1692e(5) and e(13) claims.

---

[10]   *See Jacobson v. Healthcare Fin. Servs., Inc*., 516 F.3d 85, 95 (2d Cir. 2008) ("The FDCPA provides for fee-shifting as a matter of course to successful plaintiffs[.]").

As indicated above, the matter will be referred to the Judge McCarthy for an inquest on emotional damages and on the issue of attorneys' costs and fees. The parties must notify the Court within 21 days of this Order the witnesses they seek to call on their respective positions with on the issue of emotional damages.  The Court also awards a total of $500 for statutory damages under 15 U.S.C. § 1692k(a)(2)(A).

The Clerk of Court is respectfully directed to terminate the motion at ECF Nos. 84, 85, 86, 87.

Dated:    December 8, 2022
          White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge