UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHAUL LEVY,

                Plaintiff,

    -against-

LAW OFFICES OF J. HENRY NIERMAN;
J. HENRY NIERMAN; and
RECOVERY OF JUDGMENT LLC,

                Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

17 Civ. 4022 (NSR)(JCM)

To the Honorable Nelson S. Román, United States District Judge:

    Plaintiff Shaul Levy commenced this action on May 30, 2017 against J. Henry Nierman ("Nierman"), Law Offices of J. Henry Nierman ("LOHN"), and Recovery of Judgment, LLC ("ROJ"), (collectively, "Defendants"), alleging, *inter alia*, violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and New York General Business Law § 349 ("NYGBL"). (Docket No. 1). The parties cross-moved for summary judgment on April 30, 2021. (Docket Nos. 86, 87). On December 8, 2022, Your Honor dismissed Plaintiff's NYGBL claim, as well as his claims under Sections 1692e(10) and 1692f(1) of the FDCPA, while granting summary judgment for Plaintiff on his FDCPA § 1692e(5) and (13) claims. (Docket No. 93). Thereafter, Your Honor referred the matter to the undersigned to conduct an inquest on damages and attorney's fees and costs. (*Id.* at 93). I held an Inquest Hearing on June 12, 2023 (the "Inquest").

    Plaintiff seeks $3,000.00 for reimbursement of a flat fee paid to retain counsel in connection to the purported debt, $30,000.00 to $50,000.00 in emotional damages, (Docket No. 110), as well as $193,587.37 in attorney's fees and costs, (Docket Nos. 111, 112, 113, 114, 115, 149). Defendants oppose the request. (Docket Nos. 109-1, 119, 120, 153). For the reasons set

forth herein, I respectfully recommend that Plaintiff be awarded $8,000.00 in actual damages, $500.00 in statutory damages, $103,214.37 in attorney's fees, and $5,924.87 in costs, for a total award of $117,639.24.

I. BACKGROUND

A. Procedural History

The underlying dispute relates to a letter Defendants sent Plaintiff at his residence in Miami Beach, Florida on December 13, 2016 (the "Letter"). (Docket Nos. 1-2, 110 ¶ 7). The Letter "direct[ed] [Plaintiff] to appear for a post-judgment deposition on **December 26, 2016 at 10:00AM**," and to "turn over [] financial information," including "tax returns, bank statements and other documents" purportedly in connection to a case pending in the Civil Court of the City of New York, County of New York. (Docket No. 1-2) (emphasis in original). The letter contained a "FINAL NOTICE" watermark and warned Plaintiff "**that failure to comply with a properly issued subpoena entitles the creditor to move the Court to impose sanctions on the debtor and request <u>additional fines and/or imprisonment</u>**." (*Id.*) (emphasis in original). The Letter attached a subpoena repeating the demand for Plaintiff to appear for a deposition, while also identifying 25 categories of financial documents Plaintiff had to produce since a judgment was allegedly entered against him "in the total sum of $8,700.00, of which the sum of $13,990.08 remains due and unpaid." (Docket No. 1-1 at 2). The purported judgment stemmed from his alleged failure to pay rent for his prior residence in New York City.

Upon receiving the Letter, Plaintiff hired the Schlanger Law Group, LLP to represent him for a flat fee of $3,000.00, exclusive of any fees incurred during subsequent affirmative litigation. (Docket No. 89 at 6). The Schlanger Law Group contacted defense counsel shortly thereafter to gather more information on the underlying judgment. (Docket No. 145 at 2-3).

Nierman informed Plaintiff's counsel that he would send the court file shortly, but never did. (*Id.*). The Schlanger Law Group was unable to independently identify the underlying case and, as a result, this action was filed on May 30, 2017. (*Id.* at 3). The parties cross-moved for summary judgment in 2021, (Docket Nos. 84, 85, 86, 87, 91, 92), and on December 8, 2022, Your Honor entered judgment for Plaintiff on his FDCPA § 1692e(5) and (13) claims. (Docket No. 93 at 3-4, 23-24). Your Honor also awarded Plaintiff $500.00 in statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), and referred the case to the undersigned for an inquest on actual damages and attorney's costs and fees. (*Id.* at 24). The undersigned held an Inquest on June 12, 2023. (*See* June 12, 2023 Minute Entry). At the end of the hearing, Defendants sought leave to file a motion to dismiss the case on standing grounds. (Docket No. 109-1 at 9). Your Honor granted leave and Defendants filed their motion to dismiss on February 19, 2024. (Docket No. 140). On May 20, 2024, Your Honor denied the motion and re-referred the case "for an inquest on emotional damages, Plaintiff's $3,000.00 legal fee, and the issue of attorney's costs and fees." (Docket No. 145 at 8).

**B.    The Damages Inquest**

At the Inquest, Plaintiff and his wife of ten years, Tessa Levy, testified in support of Plaintiff's request for emotional damages. (H'g Tr.[1] at 4-5). The defense did not call any witnesses. Ms. Levy testified first. She stated that when Plaintiff received the Letter, they had "known each other for ten years," and had just had their first child together. (*Id.* at 6-7). Ms. Levy was not working at the time because she was a new mother, so Plaintiff was the sole wage earner. (*Id.* at 8-9). She testified that Plaintiff's receipt of the Letter coincided with a particularly difficult period in her life since her daughter had "severe colic" that could "not be relieved," so

---

[1] "H'g Tr." refers to the transcript of the Inquest held on June 12, 2023. (Docket No. 110-1).

"she didn't sleep at all for three months." (*Id.* at 8). Additionally, her mother was suffering from "terminal cancer." (*Id.* at 9). So, if Plaintiff "had to suddenly travel or was fined or imprisoned," it would have been "detrimental" and "devastating to their family." (*Id.* at 8). According to Ms. Levy, they could not afford childcare at the time, and Plaintiff "was the only one helping" with their daughter. (*Id.*). She explained that Plaintiff also provided emotional support to Ms. Levy's mother, and cared for the family dog. (*Id.* at 10).

Ms. Levy claimed that Plaintiff's behavior changed in December of 2016 after he received the Letter. She testified that "[t]here was a quick switch in December where he stopped helping me with my daughter at night and he wouldn't hold her anymore and he wasn't sleeping himself." (*Id.* at 11). Ms. Levy elaborated that Plaintiff was "just disconnected . . . he would leave the house around 4:30, 5:00 [a.m.] . . . he no longer could help me walk my dog . . . he didn't hold [their daughter] anymore. He didn't help me. He was short with [the baby]. He was short with my dog." (*Id.* at 12-13). Ms. Levy also stated that after Plaintiff received the Letter, he "didn't spend any time with her [terminally ill mother] at all." (*Id.* at 15). When counsel asked more directly how Plaintiff's emotional state changed in response to the Letter, she stated that "[h]e was afraid," he "started working excessively and leaving the house a lot earlier," and did not return to his normal emotional state until "early in 2017." (*Id.* at 17-18). On cross-examination, Ms. Levy admitted that she knew Plaintiff lived in New York City in 2010 but did not know if he lived at the 635 West 42nd Street, New York, New York address at issue, or if he owed any money to the building's landlord. (*Id.* at 22).

Plaintiff testified after his wife. (*Id.* at 24). He explained that he emigrated to the United States from Israel in 1990 and lived in New York City from about 1990 until 2010. (*Id.* at 25-26). During that time, he struggled with alcohol and drug abuse and "was doing a lot of drinking

and a lot of drugs" while living in New York City. (*Id.* at 28).  He acknowledged that he lived at 635 West 42nd Street for "maybe a year," but did not remember owing any money to the landlord, or having a judgment entered against him as a result. (*Id.* at 29-30).  Plaintiff said that he received the Letter in "mid-December of 2016" and that it was "a very terrifying moment" and "very scary." (*Id.* at 33).  He explained that he thought if he did not comply with the Letter's demands he could face "fines and imprisonment" or was "going to get arrested." (*Id.* at 44-45). Plaintiff said the Letter also confused him because it required him to appear on December 26, 2016, which "was Christmastime.  It was Hanukkah, too." (*Id.* at 47).

Plaintiff said he did not tell anyone, including his wife, about his feelings when he received the Letter because there was "enough pressure in the house" already. (*Id.* at 33).  He said that the Letter caused him to lose sleep, he "was very worried," and "wasn't available as much" as he was "supposed to be" when it came to caring for his newborn daughter. (*Id.* at 34). Plaintiff further testified that the Letter caused him to lose focus, that he had to start contacting his addiction treatment sponsor "daily," even though he previously only spoke to him three to four times a week. (*Id.* at 36).  As to his schedule, Plaintiff said that before receiving the Letter he would leave the house for work around "9:00 [a.m.]" and come home "at 5:00, 5:30 [p.m.]" but the added stress from the Letter caused him to wake up earlier and he began leaving the house "between 6:00 to 7:00 [a.m.]" and returning "around 8:00 [p.m.]." (*Id.* at 37).  He also testified that he stopped exercising after receiving the Letter. (*Id.* at 38).  Plaintiff admitted that he began to feel a little better once he hired a lawyer "three weeks after" receiving the Letter. (*Id.* at 51-52).  However, he testified that the stress did not "totally abate" until "maybe six months later." (*Id.* at 52).  When cross-examined, Plaintiff clarified that he may have hired counsel "two, one, two, [or] three" weeks after receiving the Letter but could not remember. (*Id.* at 54).  In

- 5 -

addition, he acknowledged that the Complaint states that his attorney's first conversation with Nierman was on December 27, 2016, fourteen days after the Letter was postmarked, (*id.*), and that upon giving the Letter to his attorney he "felt relief," (*id.* at 58-60). Further, Plaintiff admitted that while living in New York, he moved out of 635 West 42nd Street "for two months" for addiction treatment, which is why he could not remember if he had any debt related to his tenancy. (*Id.* at 60-61). He explained that when he returned to the building after treatment, all his furniture was gone and he was not allowed to enter. (*Id.* at 62). Finally, Plaintiff acknowledged that he never sought medical treatment for the anxiety allegedly caused by the Letter. (*Id.* at 63).

## II.   DISCUSSION

### A.   Legal Standard

Even though the Court has already found Defendants liable on some of Plaintiff's FDCPA claims, (*see* Docket No. 93 at 3-4, 23-24), the "Plaintiff [still] bears the burden to establish [his] entitlement to damages." *E. Mishan & Sons, Inc. v. Novel Brands LLC*, 18-CV-02932 (VSB)(SN), 2020 WL 9815178, at *3 (S.D.N.Y. Feb. 13, 2020), *report and recommendation adopted*, 2022 WL 407393 (S.D.N.Y. Feb. 10, 2022). "There must be an evidentiary basis for the damages sought, and so a court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Reyes v. Lincoln Deli Grocery Corp.*, 17-CV-2732 (KBF), 2018 WL 2722455, at *2 (S.D.N.Y. June 5, 2018) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) and *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Thus, the Court held a hearing to "determine the damages owed." (*Id.*).

B.     **Actual Damages**

The FDCPA states that, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . any actual damage sustained by such person as a result of such failure." 15 U.S.C. § 1692k(a)(1). "Actual damages are intended to compensate a plaintiff for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA." *Slusher v. Asset Consulting Experts, LLC*, 1:19-CV-01265 (EAW), 2021 WL 868627, at *5 (W.D.N.Y. Mar. 9, 2021) (internal quotations omitted).

Plaintiff argues that he is entitled to recover the $3,000.00 spent to hire counsel "to represent him in defending against" the Letter prior to the commencement of this action, as well as $30,000.00 to $50,000.00 in emotional damages. (Docket Nos. 110 at 17; 145 at 2). In support of his damages claim, Plaintiff points to his: (1) retention agreement with Kakalec & Schlanger, LLP (now known as Schlanger Law Group), which states that he was required to pay a "flat fee of $3000.00" for representation in connection with the alleged judgment against him,[2] (Docket No. 89 at 6); (2) testimony that the Letter had a "negative impact . . . on his sleep, daily routine and general well-being," (Docket No. 110 at 16); (3) testimony that "[t]he potential penalties described in the Letter . . . made him worry for his newborn daughter and wife" because he provided for them, (*id.*); (4) testimony that the Letter "triggered additional urges to relapse and consume alcohol, which required more frequent contact with his sponsor," (*id.*); and (5) wife's testimony corroborating his emotional damages and its effect on their family, (*id.*).

---

[2] The agreement also states that this flat fee would "not cover our representation of you . . . in an affirmative claim under the Fair Debt Collection Practices Act." (Docket No. 89 at 6).

- 7 -

In response, Defendants contend that Plaintiff is not entitled to emotional damages because "there is simply no objective evidence of anxiety or emotional distress related" to the Letter. (Docket No. 109-1 at 8). Defendants posit that the real reason for Plaintiff's distress was that the Letter prompted him to remember that he was in debt for failing to make payments while living at 635 West 42nd Street, which he did not remember since at the time the debt was incurred, he was hospitalized for substance abuse treatment. (*Id.* at 5-6). Defendants offer no argument in opposition to the $3,000.00 fee Plaintiff paid to retain counsel.

**1.    Initial Engagement Fee**

Plaintiff is entitled to reimbursement of the $3,000.00 fee he paid Schlanger Law Group to represent him against the alleged judgment Defendants were attempting to enforce. Plaintiff submitted his retention agreement with the Schlanger Law Group, which shows that he was required to pay $3,000.00 for representation against the purported judgment. (Docket No. 89 at 6-12). Since the court has already found that Defendants violated the FDCPA in sending the unenforceable Letter to Plaintiff, (Docket No. 93 at 12-16), and Plaintiff hired the Schlanger Law Group to defend him against that Letter, he is entitled to recover this fee, (*see* Docket No. 145) (holding that "legal fees which resulted from Defendants' FDCPA violations constitute a cognizable monetary harm"); *see also Randle v. AC Asset Servs. LLC*, 19-CV-01074 (LJV), 2020 WL 5757187, at *5 (W.D.N.Y. Sept. 28, 2020) (granting plaintiff $1,000.00 in actual damages because he made "three or four payments" in response to threats from a defendant attempting to unlawfully enforce a judgment against him); *accord Hamid v. Stock & Grimes, LLP*, 876 F. Supp. 2d 500, 503 (E.D. Pa. 2012) (awarding plaintiff the amount paid to settle an unenforceable debt and holding that "debtors may recover the amount paid to settle a debt, if the debt collector violated the FDCPA in making the collection").

## 2.     **Emotional Distress Damages**

Similarly, Plaintiff is entitled to an award of emotional damages—just not in the amount requested.  "A prevailing plaintiff in a FDCPA suit may also recover actual damages for emotional distress." *Lepski v. Bayside Cap. Servs., LLC*, 19-CV-1677S, 2020 WL 4192245, at *3 (W.D.N.Y. July 21, 2020).  "A plaintiff requesting actual damages 'bears the burden of proof by a preponderance of the evidence.'" *Id.* (quoting *Chudomel v. Dynamic Recovery Servs., Inc.*, No. 12-CV-05365 (NGG)(RLM), 2013 WL 5970613, at *8 (E.D.N.Y. Nov. 8, 2013)).  "Although a plaintiff may rely on his or her own testimony to establish actual damages, he or she must explain the circumstances of . . . injury in reasonable detail, and may not rely on conclusory statements' unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Lennon v. Allegiance Acct. Servs., LLC*, 19-CV-1541 (LJV)(F), 2022 WL 18674455, at *6 (W.D.N.Y. Dec. 20, 2022) (citations and internal quotations omitted) (cleaned up), *report and recommendation adopted*, 2023 WL 1969555 (W.D.N.Y. Jan. 17, 2023).  "[C]onclusory assertions of loss of sleep, stress, and anxiety," in the absence of medical evidence, are insufficient to support a substantial actual damages award. *Id.*

Here, Plaintiff testified that the Letter caused him to lose sleep, disengage emotionally and physically from caring for his family, and that it increased his urge to relapse. (H'g Tr. at 34-45).  His testimony was corroborated by his wife, who testified that around the time Plaintiff received the Letter she noticed a substantial change in his behavior. (*Id.* at 9-20).  The Court finds this to be believable.  The Letter contained aggressive language about potential violations, it demanded Plaintiff produce voluminous records and appear on a holiday,[3] and it attached a

---

[3] The Court takes judicial notice pursuant to Rule 201 of the Federal Rules of Evidence that December 26, 2016, was a federal holiday (Christmas Day). *See* 2016 Holiday Calendar, Historical Data, U.S. OFFICE OF

purported subpoena. (Docket No. 1-2). It is conceivable that an individual receiving this letter would suffer some form of emotional distress, especially when the recipient has little recollection of the time period referenced due to alcohol and substance abuse. (H'g Tr. at 28-30).

However, the damages award requested (between $30,000.00 and $50,000.00), is belied by the evidence because Plaintiff testified he felt a "little better" after meeting with counsel about the Letter. (*Id.* at 52). Plaintiff testified that this meeting took place between one and three weeks of receiving the letter, but he could not confirm the exact date. (*Id.* at 52, 54, 56, 59). Moreover, Plaintiff has not submitted any "medical corroboration," *Randle*, 2020 WL 5757187, at *5, or documentary evidence of his emotional distress, and relies only on his testimony that he had to contact his sponsor more frequently than previously. (*Id.* at 36, 38) (testifying that he "felt the urge so I used to contact my sponsor daily" rather than the typical "three" or "four" times a week he previously contacted him). Therefore, the Court does not find Plaintiff's testimony that he suffered emotional harm for "six months" after receiving the Letter credible, (H'g Tr. at 52), nor that it was so egregious that a five-figure damages award is warranted.

Instead, an award of $5,000.00 in emotional damages is commensurate with the evidence presented in this case, and is in line with similar cases in this circuit. *See, e.g.*, *Lennon*, 2022 WL 18674455, at *6 (awarding a total of $1,500.00 in emotional damages where defendant made numerous calls to plaintiffs and their family members "without sufficient justification for doing so" and plaintiffs complained of "loss of sleep, stress, and anxiety" without presenting medical evidence); *Slusher*, 2021 WL 868627, at *5 (awarding $1,000.00 under similar circumstances); *Lepski*, 2020 WL 4192245, at *3 (awarding $2,000.00 under similar circumstances); *Randle*,

---

PERSONNEL MGMT., https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Historical-Data (last visited July 3, 2024). December 26, 2016, was also the third day of Chanukah. *See* Jewish Holidays in 2016, Chabad.org, https://www.chabad.org/holidays/default_cdo/year/2016/jewish/holidays-2016 htm (last visited July 3, 2024).

2020 WL 5757187, at *5 (awarding $500.00 where the plaintiff "has not submitted any additional documentation—medical or otherwise—to corroborate her claim of increased anxiety"); *Chudomel*, 2013 WL 5970613 (holding that plaintiff's "actual damages request of $10,000 was excessive," but awarding $1,000.00 since the court was "satisfied that plaintiff has established some emotional distress on her part"); *Mira v. Maximum Recovery Sols., Inc.*, No. CV 11-1009 (ADS)(GRB), 2012 WL 4511623, at *3 (E.D.N.Y. Aug. 31, 2012) (awarding $1,000.00 where plaintiff complained of "fear, anxiety, panic, nervousness, as well as nausea, loss of appetite, sleep loss, sickness, and frustration and embarrassment" due to plaintiff's phone calls to collect on an unenforceable debt), *report and recommendation adopted*, 2012 WL 4581590 (E.D.N.Y. Sept. 29, 2012); *Baruch v. Healthcare Receivable Mgmt., Inc.*, No. 05-CV-5392 (CPS)(JMA), 2007 WL 3232090, at *4 (E.D.N.Y. Oct. 30, 2007) (awarding $5,000.00 where it was "plausible that plaintiff has suffered anxiety, sleeplessness and depression over the course of defendant's misconduct").

Plaintiff's reliance on *Kohli v. Indep. Recovery Res., Inc.*, No. 17-CV-3154 (RLM), 2021 WL 9219040 (E.D.N.Y. Nov. 29, 2021), does not change the Court's conclusion. In *Kohli*, defendants attempted to collect a purported debt associated with the storage of plaintiff's embryos that were supposed to be destroyed. *Id.* at *2. When plaintiff refused to pay, the defendants "made several reports of plaintiff's debt to the credit reporting agencies," which "resulted in derogatory notations on plaintiff's credit report and decreased her credit score." *Id.* Here, Defendants' misconduct was far less egregious since the purported debt was in connection to housing rental fees, and the only action taken by Defendants was to send a single threatening letter.[4] Thus, an award similar to the $50,000.00 given in *Kohli* is unwarranted.

---

[4] The same is true for the other cases Plaintiff cites in support of a substantial damages award. (Docket No. 110 at 12-13). These cases include, *inter alia*, debt collectors who: (1) filed for foreclosure and then refused to dismiss the

Accordingly, I respectfully recommend that Plaintiff be awarded a total of $8,000.00 in actual damages, which consists of the $3,000.00 flat fee, and $5,000.00 in emotional damages.

## C.  Attorney's Fees

Plaintiff argues that the Court should award counsel $187,662.50 in attorney's fees for 517.7 hours because this was a contested FDCPA action that required extensive motion practice and an inquest hearing. (Docket Nos. 112 at 1-12; 149 at 1-5).  In response, Defendants contend that this award should be reduced by 63.5% because the number of hours billed was excessive and much of the time expended was for: (1) filing a motion for default judgment that was ultimately denied; and (2) pursuing claims that were dismissed on summary judgment. (Docket No. 119 at 1-8).

The FDCPA authorizes the prevailing party to obtain an award of "the costs of the action, together with a reasonable attorney's fee." 15 U.S.C. § 1692k(a)(3).  "The starting point in determining attorneys' fee awards is calculation of the 'lodestar' by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation; the lodestar creates a presumptively reasonable fee." *Greifman v. Grossman & Karaszewski, PLLC*, 19-CV-04625 (PMH), 2021 WL 1226420, at *3 (S.D.N.Y. Mar. 31, 2021) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 188-90 (2d Cir. 2008)).  A court

---

action "until six months" after the plaintiff filed an FDCPA action, *see Goodin v. Bank of Am., N.A.*, 114 F. Supp. 3d 1197, 1213 (M.D. Fla. 2015); (2) went to trial and had a jury award substantial damages against them, *see Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007); (3) were charged and penalized by a jury under state law, *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 483 (5th Cir. 2015); (4) called a plaintiff's place of employment "disclosing to the office manager" the purported debt owed, *Centerbar v. Esser James & Assocs., LLC*, 16-CV-896, 2018 WL 3358880, at *1 (W.D.N.Y. July 10, 2018); (5) "repeatedly threatened to keep the debt on [plaintiff's] credit report, to take [p]laintiff to court, to garnish her wages, to call her every single day until she paid the debt, and to prevent [p]laintiff from ever receiving a credit card or a loan," *Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215, 1218 (S.D. Cal. 2008); (6) failed to appear to contest the plaintiff's action, *see Hutchins v. Mountain Run Sols., LLC*, No. CV 20-5853, 2021 WL 5356774, at *3 (E.D. Pa. Nov. 17, 2021); and (7) "fil[ed] a false claim of lien, by engaging in abusive litigation, and by attempted to contact [p]laintiff[s] directly when it knew that [p]laintiffs were represented by counsel," *Cross v. EquityExperts.Org, LLC*, No. 1:17-CV-0380 (AT), 2019 WL 4409321, at *4 (N.D. Ga. Sept. 12, 2019), *aff'd*, No. 19-14067, 2021 WL 5279412 (11th Cir. Nov. 12, 2021).

evaluating a request for attorney's fees must base its award on a reasonable hourly rate, *i.e.*, "the rate a paying client would be willing to pay," bearing in mind that a client "wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 182-90.  A reasonable hourly rate is one "in line with prevailing rates" in the district where the court sits "for similar services by lawyers of reasonably comparable skill, expertise and reputation." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (alterations omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

In addition, "[t]he party seeking attorneys' fees bears the burden of demonstrating that the claimed . . . number of hours [is] reasonable," and the "amount of time expended" is "adequately supported by contemporaneous time records specifying relevant dates, time spent, and work done." *Creighton v. Dominican Coll.*, No. C09-3983Z, 2011 WL 4914724, at *6 (S.D.N.Y. Aug. 16, 2011) (internal quotations and citations omitted).  Finally, "[a]djustments must be made to the number of hours expended based on case-specific factors, including deductions for 'excessive, redundant, or otherwise unnecessary hours.'" *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).  In making such adjustments, "'the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" *Fed. Ins. Co. v. Mertz*, 12 Civ. 1597 (NSR)(JCM), 2017 WL 3206597, at *4 (S.D.N.Y. Apr. 14, 2017) (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009)), *report and recommendation adopted*, 2017 WL 3206336 (S.D.N.Y. July 26, 2017).

As an initial matter, the Court finds that the requested hourly rates are reasonable under the circumstances.  Plaintiff seeks to recover fees for nine different timekeepers, including: (1)

two partners, charging $450.00 per hour; (2) one of counsel, charging $325.00 per hour; (3) two senior associates, charging $325.00 per hour; (4) one junior associate, charging $200.00 per hour; (4) one law graduate, charging $150.00 per hour; and (5) two paralegals, charging $100.00 per hour. (Docket No. 114 at 6-7). These rates are largely in line with prevailing market rates in this district for FDCPA litigation. *See, e.g.*, *Greifman*, 2021 WL 1226420, at *3 (approving hourly rates of $450.00 for partners, $325.00 for senior associates, $250.00 for junior associates, and $100.00 for paralegals in FDCPA action); *Bowman v. Receivables Performance Mgmt. LLC*, No. 20-CV-1779 (LTS), 2022 WL 1321372, at *1 (S.D.N.Y. May 3, 2022) (approving hourly rates of $425.00 for partners, $300.00 for a senior associate, $225.00 for junior associates, and $100.00 for paralegals in FDCPA action); *Lichter v. Bureau of Accts. Control, Inc.*, 19 Civ. 04476 (ER), 2021 WL 5115259, at *5 (S.D.N.Y. Nov. 2, 2021) (finding that reasonable hourly rates in FDCPA case are "$450 for partners," between $225.00 and $325.00 for associates, and "$100 for paralegal time").

However, the time expended, and the number of timekeepers assigned to the case, is excessive under the circumstances.[5] Plaintiff seeks to recover for 517.7 hours spent on the case by six different attorneys. (Docket No. 114 at 7). While this case included motion practice, as well as a hearing on damages, the overall subject matter is not complicated, and the hours purportedly expended far exceed the hours awarded in similar cases in this district. *See, e.g.*, *Lichter*, 2021 WL 5115259, at *5 (awarding 101.7 billable hours in a matter that "should have been a routine FDCPA claim," but for the defendants' "insistence on litigating the matter aggressively"). In fact, the Court was not able to find, nor does Plaintiff identify, any recent cases in this district where a court awarded over 400 hours for time spent in a straight-forward

---

[5] For example, Plaintiff seeks to recover for over 40 hours spent preparing for a 2.5 hour Inquest where Defendants did not call a single witness. (Docket No. 114-7).

FDCPA action. Moreover, much of the motion practice in this case involved Plaintiff's pursuit of a NYGBL claim, as well as FDCPA claims under Sections 1692e(10) and 1692f(1), that were dismissed on summary judgment. (Docket No. 93). In addition, Plaintiff seeks to recover over 60 hours for an ill-fated default judgment motion. (Docket No. 114-7). Since, "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fee," *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983), a reduction to account for the amount expended on pursuing these claims is warranted. The Court is mindful of the time Plaintiff was forced to expend in opposing Defendants' belated motion to dismiss on standing grounds, but seeking an additional $48,240.00 for 107.2 hours of attorney time on a single brief on a single issue is disproportionate to the needs of the case.

To account for counsel's inflated billing practices and pursuit of unsuccessful claims, the Court will apply a 45% reduction to the amount requested. "When a court concludes that the number of hours expended by counsel has been excessive, it may forego reviewing the timekeepers' individual time entries, and instead apply an across-the-board percentage reduction in compensable hours." *Cawthon v. Zhousunyijie*, 22-CV-03021 (LJL), 2024 WL 1156073, at *11 (S.D.N.Y. Mar. 18, 2024); *see also Francois v. Mazer*, 523 F. App'x 28 (2d Cir. 2013) ("A district court, however, need not set forth item-by-item findings concerning what may be countless objections to individual billing items") (internal quotations omitted). While this is less than Defendants' request for a 63.5% reduction, it is comparable to what other courts in this district have done where, as here, the billing records do not allow the Court to differentiate between the time spent pursuing successful claims versus those dismissed on summary judgment. *See, e.g.*, *Doe v. Rye City Sch. Dist.*, No. 22 Civ. 08898 (NSR), 2024 WL 1955536, at *9 (S.D.N.Y. May 3, 2024) (finding that "a reduction of 50% is appropriate to account for

Plaintiff's partial success" since the court could not "clearly demarcate counsel's time spent on the successful claims versus the unsuccessful claims.") (citing *Hensley*, 461 U.S. at 436-37 ("[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.")); *Cawthon*, 2024 WL 1156073, at *11 (applying a 50% across-the-board reduction where "the number of hours expended by counsel has been excessive"); *PG 1044 Madison Assocs., L.L.C. v. Sirene One, L.L.C.*, 369 F. Supp. 2d 512, 520 (S.D.N.Y. 2005) (applying a "reduction of 50%" because the plaintiff "should not be compensated for claims they did not win."); *Off. Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, CV 13-5475 (JS)(AKT), 2018 WL 7291396, at *12 (E.D.N.Y. Aug. 24, 2018) (applying an "across-the-board fee reduction of 40%" where the hours billed were "excessive and, in many places, illustrative of block billing"); *Francois v. Mazer*, No. 09 Civ. 3275 (KBF), 2012 WL 3245439, at *2 (S.D.N.Y. Aug. 6, 2012) (applying a 40% cut where there was "surplusage" in time billed and the court could not determine how much of the time was spent was on plaintiff's victorious meritorious claims), *aff'd*, 523 F. App'x 28 (2d Cir. 2013); *Agudelo v. E & D LLC*, No. 12 CV 960 (HB), 2013 WL 1401887, at *3 (S.D.N.Y. Apr. 4, 2013) ("[r]ather than making minute-by-minute deductions, to remedy [excessive] billing practices I instead reduce all of counsel's time charges by 50 percent.").

Accordingly, I respectfully recommend that Plaintiff be awarded a total of $103,214.37 in attorney's fees, which represents a 45% reduction from his requested award of $187,662.50.

**D.     Costs**

Plaintiff argues that he should be awarded $5,924.87 for costs incurred in this case. (Docket No. 114-7 at 25-26).  Defendants offer no argument in opposition to this request.  "In addition to reasonable attorney's fees, counsel for a prevailing party in an FDCPA action is entitled to an award of the costs of the action." *Hallmark v. Cohen & Slamowitz, LLP*, 378 F.

Supp. 3d 222, 235 (W.D.N.Y. 2019) (citations and internal quotations omitted).  Here, Plaintiff submitted a detailed, itemized breakdown of the costs incurred, which largely includes administrative fees related to court filings, ordering transcripts, and conducting legal research, totaling $5,924.87.  (Docket No. 114-7 at 25-26).  The Court finds no basis to reduce this figure given the length of the case, the number of filings, and the discovery conducted.

Accordingly, I respectfully recommend that Plaintiff be awarded $5,924.87 in costs.

### III.   CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff be awarded $8,000.00 in actual damages, $500.00 in statutory damages, and $103,214.37 in attorney's fees, and $5,924.87 in costs, for a total award of $117,639.24.

### IV.   NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file written objections. *See* Fed. R. Civ. P. 6(a) and (d) (rules for computing time).  A party may respond to another party's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2).  Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Nelson S. Román at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Requests for extensions of time to file objections must be made to the Honorable Nelson S. Román and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude later appellate review of

any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 6(d), 72(b); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:    July 3, 2024
            White Plains, New York

            **RESPECTFULLY SUBMITTED,**

            */s/ Judith C. McCarthy*
            JUDITH C. McCARTHY
            United States Magistrate Judge